BECK, APPELLANT, *v.* JOLLIFF, EXR., ET AL., APPELLEES.

(No. 84-CA-15 — Decided December 21, 1984.)

*Joel R. Aberth,* for appellant.

*Alan P. Gustafson, William P. Bringman, Douglas S. Roberts* and *Robert E. Mahee,* for appellees.

WISE, J. This appeal arises from a judgment entered by the Court of Common Pleas of Knox County, Probate Division, which granted summary judgment to defendants-appellees, Rollin Jolliff, Executor of the Estate of Paul Blair Beck, and the persons designated to receive testamentary disposition of decedent's real and/or personal property (appellees), and against plaintiff-appellant, Keith Beck (appellant).

Appellant filed an action contesting the will of Paul Blair Beck, deceased, and alleging that appellant as the "only natural child born to and surviving his natural father, Paul B. Beck, deceased" is the only person entitled to inherit pursuant to R.C. 2105.06 if the said will is declared invalid.

Appellees filed motions for summary judgment based on the fact that appellant did not have standing to bring the will contest action because he was an "illegitimate child of a decedent father" and "does not have rights of inheritance from or through his father unless the father takes certain affirmative steps during his lifetime to bestow such rights on the child."

The trial court granted summary judgment in favor of appellees and against appellant from which judgment appellant timely appealed, assigning the following two assignments of error:

"I. The trial judge errored [*sic*] as a matter of law in finding that the illegitimate son (Keith Beck) of the deceased father (Paul Blair Beck) lacks standing to contest the will of the deceased father.

"II. The trial judge errored [*sic*] as a matter of law in granting the motions for summary judgment of the defendants-appellees."

The trial court made the following separate Findings of Fact:

"1) That PAUL BLAIR BECK never married DONNA BELLE CONN, natural Mother of KEITH ERIC CONN aka KEITH ERIC BECK.

"2) That PAUL BLAIR BECK never acknowledged KEITH ERIC CONN to be his child under Section 2105.18 of the Revised Code.

"3) That PAUL BLAIR BECK never designated KEITH ERIC CONN his heir at law under Section 2105.15 of the Revised Code.

"4) That PAUL BLAIR BECK never adopted KEITH ERIC CONN.

"5) That the Knox County Common Pleas Court Case No. 17177 involved the sole question of whether or not, PAUL

B. BECK, was the Father of a bastard child born of DONNA BELLE CONN, on August 1, 1941.

"6) A jury returned a verdict that he was the reputed father as alleged in the above-mentioned case and such verdict was not appealed.

"7) In compliance with the Order of the Court arising from the above-mentioned case, the said PAUL B. BECK did make certain payments of support of the minor child and certain payments for expenses of pregnancy and delivering of said child.

"8) The records of the proceedings of the above-mentioned case relects [sic] that PAUL B. BECK did not admit, nor did he deny, that he was the natural father of such child."

The trial court made the following Conclusions of Law:

"Plaintiff, KEITH BECK, lacks standing to contest the Will of the herein decedent in that he would not be entitled to inherit property from the decedent pursuant to Section 2105.06 of the Ohio Revised Code, if the Will of the decedent is declared invalid."

Appellant agrees that the appeal from the order granting summary judgment is not based on a genuine dispute as to a material fact or facts, but that such judgment is inappropriate on the undisputed facts as a matter of law.

Appellees argue, first, that "[a] father *must* take affirmative steps during the lifetime to claim an illegitimate child as his natural child in order to give that child the right to inherit from him"; and, second, that there was no evidence presented in the case at bar to support the existence of a parent-child relationship. We disagree as to both hypotheses.

We hold that the word "child" as used in R.C. 2105.06 (Statute of Descent and Distribution) must be interpreted to include a child born out-of-wedlock (previously referred to statutorily as "bastard" and/or "illegitimate") if the parent-child relationship has been established pursuant to the parameters as set out in R.C. Chapter 3111, effective June 29, 1982. We further hold that in the case at bar, the parent-child relationship was established by the undisputed evidence that a jury, in a bastardy proceeding under previous R.C. 3111.01 and 3111.17, returned a verdict finding Paul B. Beck to be the reputed father of appellant. Our reasons follow.

Historically, the common law perceived a child born out-of-wedlock as a *filius nullius,* the son of no one, and, therefore, was not entitled to inherit from anyone, either mother or father. See 1 Blackstone's Commentaries (1765) 459. Moreover, he could not be legitimatized even by subsequent marriage of his parents. Only an Act of Parliament could legitimate an illegitimate. *Id.*

Ohio, although a statutory state, retains the common law unless and until changed by statute. See 9 Ohio Jurisprudence 2d (1954), Common Law, Sections 4-8.

The terms "child" and "children" as used in R.C. 2105.06 as interpreted in case law followed the common law and excluded children born out-of-wedlock in determining succession of property of intestate decedents. *Owens* v. *Humbert* (1916), 5 Ohio App. 312. This common-law discrimination against children born out-of-wedlock gradually was modified by statute. Statutes were enacted making children born prior to marriage legitimate upon the intermarriage of their parents. Prior to June 29, 1982, R.C. Chapter 3111, statutory paternity actions, provided for the identification of the illegitimate's father and for support payments during minority, but those sections did not legitimate the child nor provide inheritance rights. *In re Minor of Martin* (1977), 51 Ohio App. 2d 21 [5 O.O.3d 141]. The illegitimate's exclusion from inheritance was also statutorily modified — first, a statute was enacted which enabled the illegitimate to inherit

from his mother, R.C. 2105.17; second, prior to June 29, 1982 (appellees contend the same exists today), the Ohio statutes provided for the illegitimate to inherit from his father only if the father took affirmative steps to provide for him. The natural father of an illegitimate child could confer upon such a child a right of inheritance from such father by the following means:

1) intermarriage with mother;

2) by will;

3) adoption of the child;

4) acknowledge paternity — R.C. 2105.18; or

5) designating the child as his heir-at-law — R.C. 2105.15.

At the same time as the statutory changes were being made, the illegitimates launched a vigorous attack on the legitimacy-based discriminations as violative of the Equal Protection Clauses of the United States and Ohio Constitutions culminating in *Trimble* v. *Gordon* (1977), 430 U.S. 762 [4 O.O.3d 296], and *Lalli* v. *Lalli* (1978), 439 U.S. 259. Those two cases resulted in the Ohio Supreme Court's pronouncement in *White* v. *Randolph* (1979), 59 Ohio St. 2d 6 [13 O.O.3d 3].

Appellees argue that the issue in the case at bar should be stated as follows:

"Is it mandatory that a father take affirmative steps during his lifetime to claim an illegitimate child as his natural child in order to give that child the right to inherit from him?"

In reaching their affirmative answer to that question, appellees rely on *White* v. *Randolph, supra,* that R.C. 2105.18 is the only statute that confers a complete father-child relationship under the facts of the case at bar.

The issue for resolution in the *White* case was stated by the court at 6, quoting from Justice Holmes' court of appeals' decision:

" 'Whether the provisions of R.C. Chapter 2105 denying to one who is illegitimate any right to inherit from the natural father, unless the father has taken certain steps such as *marrying* the mother, *acknowledging* the child, designating the child as an heir-at-law, adoption, or making a provision in a will, are violative of equal protection as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Ohio Constitution.' " (Emphasis *sic.*)

The Supreme Court further quoted the court of appeals' answer to that question at 11:

" 'We conclude that the provisions of R.C. Chapter 2105, as applied to appellant, do not constitute invidious discrimination under the equal protection clause of the Fourteenth Amendment. * * *' "

The Supreme Court then added the following:

"Subsequent to the decision of the court of appeals in the instant cause, the United State Supreme Court, in the case of *Lalli* v. *Lalli,* ____ U.S. ____, 58 L.Ed. 2d 503 (1978), upheld the constitutionality of a New York statute which allowed illegitimate children to inherit from their father only if a court of competent jurisdiction, during the father's lifetime, entered an order declaring the child's paternity.

" '* * * [W]e conclude that the Ohio statutes in question in the cause at bar are substantially related to the important state interests discussed by the court in *Lalli, supra.* " *Id.*

Appellant makes the point that in *Trimble,* wherein the United States Supreme Court struck down the Illinois statute, the petitioner had been, as in the case at bar, previously adjudicated to be the child of the decedent in an action for support brought during the decedent's lifetime. In the *White* case no such determination had been made nor had any such determination been made in the *Lalli* case wherein the United States Supreme Court upheld the New York statute which allowed illegitimate

children to inherit from their father if a court of competent jurisdiction, during the father's lifetime, entered an order declaring the child's paternity.

We do not presume to speculate as to how the Supreme Court would apply the ruling in *White* to the facts of the case at bar under the statute as it existed prior to June 29, 1982. However, we conclude that Ohio case law has been obviated by the enactment of R.C. Chapter 3111 effective June 29, 1982. Judge Palmer, sitting for Justice Holmes, in his dissent in *White* v. *Randolph,* stated at 12:

"Neither state, Illinois then and Ohio now, provides any method by which the *illegitimate child* may initiate any proceeding to secure parity of inheritance with legitimate children of his father." (Emphasis *sic.*)

While that statement was true in July 1979, we believe that the legislature made it inapposite after June 28, 1982. R.C. Chapter 3111, the Ohio Parentage Act, provides procedures for determination of paternity.

First, a look at the historical development of R.C. Chapter 3111:

G.C. 12123 (1938) provided:

"* * * [I]f the jury find him guilty, he shall be adjudged the *reputed* father of the *illegitimate* child * * *." (Emphasis added.)

R.C. 3111.17 (1976) read:

"If the jury finds him guilty, he shall be adjudged the *reputed* father of the child * * *." (Emphasis added.) (It will be noted that here the word "illegitimate" was dropped from the statute.)

R.C. 3111.12(D) (1982) provides:

"* * * [T]he verdict of the jury is limited only to the parentage of the child * * *."

R.C. 3111.13(A) (1982):

"The judgment or order of the court determining the existence or nonexistence of the parent and child relationship *is determinative for all purposes.*" (Emphasis added.)

R.C. 3111.13(C) (1982):

"* * * The judgment or order shall direct the *father* to pay all or any part * * *." (Emphasis added.)

(Note the word "reputed" has been removed from the statute.)

R.C. 3111.01 (1982) provides:

"(A) *As used in this chapter,* 'parent and child relationship' means the legal relationship that exists between a child and the child's natural or adoptive parents and upon which this chapter and *any other provision of the Revised Code confers or imposes rights, privileges, duties, and obligations.* The 'parent and child relationship' includes the mother and child relationship and the father and child relationship.

"(B) The parent and child relationship extends equally to all children and all parents, *regardless of the marital status of the parents.*" (Emphasis added.)

R.C. 3111.04(A) (1982):

"An action to determine the existence or nonexistence of the father and child relationship may be brought * * *."

R.C. 3111.08(A) (1982):

"*An action brought* pursuant to this chapter to declare the existence or nonexistence of the father and child relationship *is a civil action and shall be governed by the Civil Rules* unless a different procedure is specifically provided by this chapter." (Emphasis added.)

R.C. 3111.10 (1982):

"In an action brought under this chapter, evidence relating to paternity may include:

"* * *

"(E) All other evidence relevant to the issue of paternity of the child."

R.C. 3111.12 (1982) provides:

"(D) Any party to an action brought pursuant to this chapter *may demand a jury trial. * * *

"* * * [T]he *verdict of the jury is limited only to the parentage of the child,* and all other matters involved in the ac-

tion shall be determined by the court following the rendering of the verdict." (Emphasis added.)

In *White* v. *Randolph, supra,* the Ohio Supreme Court quoted Justice Holmes at 11:

" 'The group "discriminated against" is that class of illegitimate children whose fathers did not formally acknowledge them or designate them as heirs-at-law, pursuant to R.C. 2105.18 or R.C. 2105.15.' "

It is clear that R.C. Chapter 3111, enacted after the *White* decision, provides an alternative method of establishing the parent-child relationship. We hold that the word "child" as used in the Statute of Descent and Distribution, R.C. 2105.06, now includes the child born out-of-wedlock as well as the legitimate child if the parent-child relationship has been established prior to death of the father pursuant to the parameters of R.C. Chapter 3111, as effective June 29, 1982.

In the case at bar, we hold that the proceedings under the old parentage determination, R.C. 3111.17, which found the decedent, Paul Blair Beck, to be the "reputed" father of the appellant, met the tests outlined in R.C. Chapter 3111 to establish the father-child relationship. We hold that the appellant does have standing to contest the will of decedent, Paul B. Beck, and, therefore, find that the trial court committed prejudicial error in granting summary judgment in favor of the appellees.

The judgment of the Court of Common Pleas of Knox County, Probate Division, is therefore reversed, and this matter is remanded to that court for further proceedings in accordance with law and not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MILLIGAN, P.J., and HOFFMAN, J., concur.