## Hopping v. Erie Ins. Co.
*[Cite as 2 AOA 49]*

Case No. 2649
Clark County, (2nd)
March 20, 1990

R.C. 2125.02
R.C. 3937.18

*Robert N. Lancaster, Jr., 302 Arcue Building, Springfield, Ohio 45502, Attorney for Plaintiffs–Appellants.*

*Robert F. Cowdrey, 205 East First Street, Dayton, Ohio 45402, Attorney for Defendant-Appellee.*

BROGAN, J.

Appellant, Karla Kerns Hopping, ("Hopping"), appeals from a declaratory judgment in favor of appellee, Erie Insurance Co. ("Erie"). That judgment denied appellant, as guardian and next friend of her daughter, Destiny Marie Kerns Estep, ("Destiny"), coverage under the underinsured motorist portion of an automobile insurance policy issued by appellee.

This case arose following an automobile collision which resulted in the death of Rick Estep on May 21, 1987. It was submitted to the trial court upon Joint Stipulation of fact, exhibits and briefs which disclose the following facts.

Estep was the passenger in a vehicle driven by Jeffrey Baird. Baird's automobile liability insurance, issued by Milwaukee Insurance Co., contained limits of $25,000 per person and $50,000 per accident. In addition, a second insurance policy, issued by Erie to Estep's mother and stepfather, Pamela and Michael Newberry, covered Estep at the time of his death. The Erie policy provided underinsured motorist coverage with limits of $250,000 per person and $500,000 per accident.

On June 22, 1987, Pamela Newberry was appointed as administratrix of Estep's estate. Along with his mother, Estep was survived by his natural father, two half brothers, four half sisters and a minor daughter, Nicole Repp.

On July 14, 1987, Paul Malina, counsel for Hopping, sent a letter to James Heath, counsel for the administratrix, notifying Heath that Hopping was pregnant, that the unborn child was allegedly fathered by Estep, and that the child was a potential beneficiary under the Ohio Wrongful Death statute, R.C. 2125.02. On September 6, 1987, Hopping gave birth to Destiny and on November 4, 1987, Hopping filed a paternity action alleging that Estep was Destiny's father. The administratrix filed an answer denying paternity on December 14, 1987.

The administratrix received the $25,000 policy limits from Milwaukee Insurance Co. but was unable to reach a settlement with Erie. The matter proceeded to arbitration on June 16, 1988. It is undisputed that appellant was never notified of the arbitration hearing and no evidence of Destiny's damages was presented to the arbitration panel. Following the arbitration hearing, a settlement between the administratrix and Erie was reached.

The administratrix filed an Application to Approve Wrongful Death Settlement with the Probate Court of Clark County on August 9, 1988. On that date, the trial court held a hearing on the application. In attendance were all beneficiaries including Attorney Robert Lancaster, representing Hopping as mother and next friend of Destiny. (Transcript of Proceedings upon Application to Approved Wrongful Death Settlement, p. 3).

At the hearing, Attorney Heath indicated that the estate of Estep had received $25,000 from Milwaukee Insurance Co. and had settled with Erie for payment of $125,000. All parties, including Attorney Lancaster, found the total amount of settlement, $150,000, to be agreeable. (*Id.* at 8). Heath then informed the court that Kerns, on behalf of Destiny, would received $23,500 in consideration of a release of all claims against the administratrix. Further, the administratrix would admit that Estep was Destiny's father. (*Id.* at 11). When the court inquired whether Lancaster agreed with the settlement terms as described by Heath, Lancaster responded affirmatively. (*Id.* at 11-12). On August 10, 1988, the court filed its entry approving the settlement wherein it ordered the distribution of $23,500 in wrongful death proceeds to Destiny.

In consideration of the settlement of $125,000, the administratrix executed a release in favor of Erie whereby she released Erie from all liability pursuant to the underinsured motorist coverage contained in the policy issued to Pamela and Michael Newberry.

Hoping was appointed guardian of Destiny's estate on August 25, 1988. On that date, Hopping filed an Application for Consent to Settle Claim for Damages to Minor. Therein, Hopping referred to the settlement as an "exchange for a release to [the] Administratrix *** for any claims against [her] ***", rather than a distribution of wrongful death proceeds.

Estep was adjudged the father of Destiny on August 26, 1988. On August 29, 1988, appellant filed a claim for underinsured motorist coverage pursuant to Erie's policy covering Estep; the claim was denied on December 12, 1988. The instant action for declaratory judgment was filed on December 23, 1988.

Appellant asserts that the trial court erred as a matter of law in denying her ward underinsured motorist coverage. In support of this assertion, she argues that Destiny was an insured under the Erie automobile policy and as such was entitled to assert a claim for the wrongful death of her father. Further, appellant contends that the release executed by the administratrix in favor of Erie is not binding upon Destiny because she was unrepresented at the arbitration hearing.

We disagree with both of these arguments and find that judgment in favor of appellee was proper.

The Erie insurance policy at issue, (Exhibit B), defines an insured under the policy as (1) any relative, (2) anyone else while occupying a vehicle insured by Erie, (3) anyone entitled to recover damages because of bodily injury to any person protected by this coverage. (*Id.* at 13).

It is not disputed that at the time of Estep's

death, Destiny was not a relative of an insured and did not occupy an insured vehicle. However, appellant claims that because she is beneficiary under the Ohio Wrongful Death Statute, she qualifies as an insured under the third category listed above.

The Wrongful Death Statute in force at the time of the filing of this action, R.C. 2125.02, reads in pertinent part:

"A(1) An action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the *children*, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent." (Emphasis added).

It has long been held, and subsequently reaffirmed, that the term "children" does not include an individual born out of wedlock who is not legitimized by his father during the father's lifetime. In *Bonewit* v. *Weber* (1952), 95 Ohio App. 428, the Summit County Court of Appeals considered whether "a child born out of wedlock after the death of the reputed father [can] be a beneficiary under the statutes * * * providing for an action for wrongful death." In that case, decedent was engaged to Julia Malazo at the time of his death. Decedent "knew that [Malazo] was pregnant, that such pregnancy was caused by him, and * * * he admitted to his friends and relatives that he was the one who caused such pregnancy * * * ." Nonetheless, the court held that unless a child born out of wedlock is legally acknowledged during the alleged father's lifetime, the child is foreclosed from collecting wrongful death benefits due to the alleged father's death.

Ohio law governing the rights of illegitimate children to inherit from their alleged fathers is instructive as the underlying interests of the illegitimate child, other potential beneficiaries, and the state are similar to those represented in a wrongful death action. The case of *White* v. *Randolph* (1979), 59 Ohio St. 2d 6, is particularly significant because it invalidates appellant's contention that to refuse her daughter the right to sue appellee is a denial of equal protection under the Fourteenth Amendment to the United States Constitution.

The *White* Court held that Ohio intestacy law was not discriminatory although it precluded an illegitimate child from inheriting from his alleged father who fails to legally acknowledge the child (*e.g.* through adoption, designating the child as an heir-at-law), during the father's lifetime. The

rationales supporting this holding include the orderly and definitive determination of property ownership, (*see Weber* v. *Aetna Casualty & Surety Co.* (1972), 406 U.S. 164, 92 S. Ct. 1400), the avoidance of questionable claims and the inclusion of those illegitimate children who have been positively acknowledged by their fathers (*see Lalli* v. *Lalli* (1978), 430 U.S. 274, *Trimble* v. *Gordon* (1977), 430 U.S. 762). As stated by the *White* Court:

"Clearly, the Ohio classification scheme is rationally related to the legitimate state purpose of assuring efficient disposition of property at death while avoiding spurious claims. Moreover, the Ohio provisions do not discriminate between legitimate and illegitimate children per se. All children may inherit from their mothers. Some illegitimate children and all legitimate children may inherit from their fathers. The group 'discriminated against' is that class of illegitimate children whose fathers did not formally acknowledge them or designate them as heirs-at-law, pursuant to R.C. 2105.18 or R.C. 2105.15." (*White*, *supra* at 10-11). (*See also, Beck* v. *Jolliff* (1984), 22 Ohio App. 3d 84).

This court, in *Ginter* v. *Woodell* (May 17, 1988), Clark App. No. 2392, unreported, reviewed the claim of James Ginter, who sought entitlement to the wrongful death proceeds of the estate of his alleged son. The child's mother was killed in an automobile collision in her seventh month of pregnancy and the child was stillborn. The trial court determined that "Ginter had not established his relationship as a parent for purposes of participating in the wrongful death proceeds * * * ." The following reasoning supports the decision of the majority of this court to affirm:

"The result of the White decision is that an illegitimate child may not inherit from his putative father unless his father has taken certain statutory action prior to his death. The rationale behind the court's decision is that paternity is difficult to prove after the death of the father.

"Is the alleged father of the illegitimate child to be placed in any better position than the illegitimate child? The difficulties of proving paternity are virtually the same. Although an admission that one is the father of a child is normally an admission against interest, a father may not statutorily acknowledge the child and legitimize the child in the absence of the mother's consent, or if she is deceased, s the child's lawful custodian." See R.C. 2105.18.

In the instant case, the parent-child relationship was not established during the lifetime of

Estep. Therefore, pursuant to the reasoning in *White* and *Ginter, supra*, we hold that Destiny would not be a statutory beneficiary under the Ohio Wrongful Death statute. It follows that the child cannot collect under the underinsured motorist provision of the Erie insurance policy.

Even if Destiny was determined to be a beneficiary under Ohio's Wrongful Death statute, we disagree with appellant's contention that the release executed by the administratrix in favor of Erie is not binding upon her because her child was unrepresented at the arbitration hearing.

It is well-established that absent fraud or mistake, the beneficiaries of a wrongful death action are bound by a general release executed by the decedent's personal representative. *Burwell* v. *Maynard* (1970), 21 Ohio St. 2d 108, 110-111. Such personal representative "may, at any time before or after the commencement of an action for wrongful death, settle with the defendant the amount to be paid." R.C. 2125.02(C). If, as in the instant case, the release for settlement is challenged, the burden is on the defendant, Erie, to prove "both the settlement and the consent of the probate court." *McCluskey* v. *Rob San Services, Inc.* (S.D. Ohio, 1977), 443 F. Supp. 65, 68.

We find that although appellant has alleged that both fraud and mistake render the settlement and release between the administratrix and Erie nonbinding upon Destiny, she has failed to provide proof of these allegations. Further, Erie has offered evidence which indicates that the settlement was proper and that the court approved it.

While it is true that Destiny was not represented at the arbitration hearing, her counsel was in attendance at the hearing upon the propriety of the settlement and disbursement of wrongful death proceeds. The record reflects that appellant's counsel affirmatively consented to the amount of the settlement with Erie. If appellant desired to allege the impropriety of settlement, she could have lodged her objection with the court during the settlement hearing.

We find that consent to the amount of settlement reflects an acquiescence to or waiver of any purported defects in the preceding settlement process.

Further, appellant's counsel agreed to receive a share of the wrongful death proceeds in exchange for an admission of paternity by the administratrix and a release of all claims against the administratrix.

We find that appellant's release of claims against the administratrix intrinsically reflects

her consent to the actions of the administratrix in settling the wrongful death claim against Erie.

Finally, the court approved both the settlement with Erie and the distribution of the wrongful death funds. As discussed in *McCluskey, supra* at 69, "[r]equiring the court's approval lessens the chances of a collusive or grossly inadequate settlement." As we have previously noted, appellant has offered no proof that the wrongful death proceeds disbursed to her resulted from an improper settlement with Erie.

For the aforestated reasons, we find that appellant is bound by the release executed by the administratrix in favor of Erie. Her assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

WILSON, J., and FAIN, J., Concur.