## In re ESTATE OF HICKS.

[Cite as *In re Estate of Hicks* (1993), 90 Ohio App.3d 483.]

Court of Appeals of Ohio,
Erie County.

No. E–92–73.

Decided Sept. 30, 1993.

484

*C. Bradford Kelley,* for appellants.

*William Shirk,* for appellee.

SHERCK, Judge.

This is an appeal from a decision of the Erie County Probate Court which found appellee Marsha Metcalfe to be the biological daughter of Dan Hicks and his sole heir at law. Because we find the decision to be contrary to the manifest weight of the evidence, we reverse.

Dan Hicks died intestate. His sister, appellant Susie Wright, was appointed temporary administrator of his estate.[1] Appellee Marsha Metcalfe, age thirty-seven, claimed to be the biological daughter of Dan Hicks and his sole heir. Accordingly, she applied for appointment as administrator of the estate. After a hearing on the merits, the trial court found appellee to be the biological daughter of Dan Hicks.

Evidence at the hearing showed that appellee's mother, Norma Whitfield, was married to one Vernon Eagy when appellee was conceived. Appellee's birth certificate lists Eagy as the father of appellee. Nevertheless, based on the testimony of Whitfield and others, the trial court found that Dan Hicks was the biological father of appellee. As a result of that finding, the trial court determined appellee to be Dan Hicks's sole heir. Appellee was then appointed administrator of the estate.

---

1. Appellants include, in addition to Susie Wright, other siblings of Dan Hicks and the descendents of his deceased siblings. For the sake of simplicity, we will refer to the many appellants in the singular as "appellant."

Appellant has appealed the trial court's decision, setting forth the following three assignments of error:

"I.  The decision of the trial court is contrary to the law of Ohio.

"II.  The statute of limitations (O.R.C. 3111.05) bars the action brought in the trial court by the appellee.

"III.  The decision of the trial court is against the manifest weight of the evidence."

## I

Appellant, in her first assignment of error, argues that appellee cannot prevail in this case because appellee did not prove that she was Hicks's daughter prior to Hicks's demise.  In support of this argument appellant relies in part on *Beck v. Jolliff* (1984), 22 Ohio App.3d 84, 22 OBR 237, 489 N.E.2d 825.  In *Beck,* the court held that the word "child" as used in R.C. 2105.06, the statute of descent and distribution, includes children born out of wedlock, but only "if the parent-child relationship has been established prior to the death of the father pursuant to the parameters of R.C. Chapter 3111 * * *."  *Id.* at 88, 22 OBR at 241, 489 N.E.2d at 829.

In order to fully understand the holding in *Beck* and its relationship to the present case, a brief history of the inheritance rights of children born to unmarried parents is necessary.  Under the common law, a child born out of wedlock was not entitled to inherit from anyone, either mother or father.  In addition, such a child could not be legitimized in any way.  Original interpretations of R.C. 2105.06 followed the common law and excluded children born out of wedlock.  See *Owens v. Humbert* (1916), 5 Ohio App. 312.  Gradually changes occurred in the common law whereby persons born out of wedlock became legitimized if the parents married.  See *Beck, supra.*

Over time the term "child" in R.C. 2105.06 came to include certain classes of illegitimate children.  R.C. 2105.17 was enacted allowing such children the right to inherit from their mothers.  However, the law provided that such a child could inherit from the child's father only if the father acted to provide for the child. The father was able to confer this right of inheritance upon a child by:

(1) intermarriage with the mother;

(2) providing for the child in a will;

(3) adopting the child;

(4) acknowledging paternity (R.C. 2105.18), or

(5) designating the child as his heir at law (R.C. 2105.15).  See *Beck, supra,* 22 Ohio App.3d at 86, 22 OBR at 239, 489 N.E.2d at 827.

All of these methods clearly required affirmative action on the father's part that logically had to occur prior to the father's death.

■ Constitutional questions then surfaced as to whether such limitations can be placed on children born out of wedlock. Arguments were raised that it was a violation of the Equal Protection Clause to distinguish between a child born within a marriage and one born outside a marriage. However, it is clear by the conclusions of *Trimble v. Gordon* (1977), 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31, and *Lalli v. Lalli* (1978), 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503, that a state has the ability to restrict the rights of those born out of wedlock if the means used are substantially related to a legitimate state purpose. In *Trimble,* the United States Supreme Court recognized a state's right and interest in restricting an illegitimate child's right to inherit. *Lalli* upheld a New York statute that allowed an illegitimate child to inherit from his alleged father only if the question of parentage was resolved during the father's lifetime.

The Ohio Supreme Court first addressed the equal protection argument as it concerns the provisions of R.C. Chapter 2105 in *White v. Randolph* (1979), 59 Ohio St.2d 6, 13 O.O.3d 3, 391 N.E.2d 333. The court, using the analysis in *Trimble* and *Lalli,* held:

"Clearly, the Ohio classification scheme is rationally related to the legitimate state purpose of assuring efficient disposition of property at death while avoiding spurious claims. Moreover, the Ohio provisions do not discriminate between legitimate and illegitimate children *per se.*" *White v. Randolph, supra,* at 10–11, 13 O.O.3d at 6, 391 N.E.2d at 335.

R.C. 2105.06 continued its evolution in 1982 with the enactment of the Ohio Parentage Act. R.C. Chapter 3111 provided an additional way for a parent-child relationship to be established by allowing a child to bring an action to determine parentage. R.C. Chapter 3111 provided the only method whereby a child born out of wedlock could take affirmative action to become "legitimate" for inheritance purposes.

■ It was upon this background that the *Beck* court reached the conclusion that the term "child" in R.C. 2105.06 in certain circumstances includes a child born out of wedlock. These circumstances were "if the parent-child relationship has been established prior to the death of the father pursuant to the parameters of R.C. Chapter 3111." *Id.,* 22 Ohio App.3d at 88, 22 OBR at 241, 489 N.E.2d at 829. We find this holding, in part, to be in error. The conclusion that in all circumstances an action to determine the parent-child relationship must be brought before the alleged father's death is incorrect. R.C. Chapter 3111 does not require a parentage action to be brought before the death of the father. In fact, R.C. 3111.06(A) suggests quite the opposite:

"The juvenile court has original jurisdiction of any action authorized under sections 3111.01 to 3111.19 of the Revised Code. An action may be brought under those sections in the juvenile court * * * *if the alleged father is deceased,* of the county in which proceedings for the probate of his estate have been or can be commenced * * *." (Emphasis added.)

We conclude that parentage actions under R.C. Chapter 3111 therefore may be brought even when "the alleged father is deceased."

Therefore, the statement in *Beck* that parentage must be determined prior to the death of the father is correct to the extent that the parent-child relationship is being established under R.C. Chapter 2105; it, however, is erroneous as to actions establishing paternity under R.C. Chapter 3111.[2] Accordingly, appellant's first assignment of error is not well taken.

## II

Appellant, in her second assignment of error, asserts that the appellee should have been barred by the statute of limitations provision of R.C. 3111.05. The section states that an action to establish parentage must be brought within five years of a child's eighteenth birthday.

It is a well-established rule that statutes of limitation defenses must be affirmatively raised; if not, they are waived. See Civ.R. 8(C); *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 69 O.O.2d 350, 320 N.E.2d 668. We find no reason to depart from this rule in the present case. Furthermore, appellant's argument that a trial court has a duty to *sua sponte* intervene and assert an alleged affirmative defense has no support in Ohio law. Accordingly, appellant's second assignment of error is not well taken.

## III

Finally, appellant argues that the decision of the trial court is against the manifest weight of the evidence and should be reversed. Judgments sup-

---

**2.** We note that appellant also relies on *Hunter–Martin v. Winchester Transp., Inc.* (1991), 71 Ohio App.3d 273, 593 N.E.2d 383, which, in discussing the different means of establishing paternity of heirship, stated that:

"Nevertheless, whichever means are utilized to enable the child to inherit from his natural father, the required acts must be completed *prior* to the death of the father." (Emphásis *sic.*) *Id.* at 275, 593 N.E.2d at 385.

It is our belief that the court in *Hunter–Martin* incorrectly relied on the holding of *Beck.* As we stated, R.C. Chapter 3111.06 allows for parentage actions after the death of the father. Our conclusion is in accord with *Palaisia v. Amick* (Dec. 21, 1990), Crawford App. No. CA 3–89–15, unreported, 1990 WL 209763, which also rejected the argument that a parentage action must be initiated before the death of the alleged father by relying on the jurisdictional provision in R.C. 3111.06(A).

ported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1275.

In order for appellee to inherit as a "child" under R.C. 2105.06 she must prove that she was a "child" within the meaning of the statute. To do this, she must prove that she was a legitimate child or "legitimized" by one of the methods allowed: intermarriage of father to mother, by will, adoption, acknowledgement of paternity (R.C. 2105.18), designation of heir at law (R.C. 2105.15) or by a parentage action to determine the father and child relationship (R.C. 3111.04).

Appellee sought to establish her right to heirship by applying to be administrator of the estate of Dan Hicks and seeking a ruling by the trial court that she was the child of Dan Hicks. Assuming, *arguendo*, that the court's finding that appellee was Dan Hicks's "biological child" was supported by competent, credible evidence, the court, nevertheless, erred in concluding that appellee had a right to his estate.

In order to prove the right to inherit, appellee bore the burden of demonstrating that she was "legitimized" in one of the recognized manners. The only one of these methods by which appellee could affirmatively seek relief would be under the Ohio Parentage Act, R.C. Chapter 3111. Under R.C. Chapter 3111, a parentage action must be brought in a juvenile court. The Erie County Probate Court's judgment that appellee was Dan Hicks's daughter was not such an action because the probate court has no jurisdiction to make such a decision. *Martin v. Davidson* (1990), 53 Ohio St.3d 240, 559 N.E.2d 1348.

We note that the probate court and the juvenile court are separate courts in Erie County. "Juvenile court" according to R.C. 2151.011(A)(1) means "the division of the court of common pleas or a juvenile court separately and independently created having jurisdiction under this chapter." R.C. 2301.03(N) separately creates a juvenile court for Erie County as a division of the domestic relations court. Because the two courts are distinct entities and because appellee failed to obtain a declaration of parentage in the juvenile court, she may not seek such a declaration in the probate court.

Because appellee failed to establish an essential element of her claim, the legitimization of herself under one of the accepted methods for purposes of obtaining the status of "child" under R.C. 2105.06, we find the trial court's decision to be against the manifest weight of the evidence. The determination that Dan Hicks was appellee's father in the trial court is not a determination

establishing appellee's right of inheritance in accordance with R.C. 2105.06. Accordingly, appellant's third assignment of error is well taken.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., and HANDWORK, J., concur.