BYRD, Appellant,

v.

TRENNOR et al., Appellees.

[Cite as *Byrd v. Trennor,* 157 Ohio App.3d 358, 2004-Ohio-2736.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2003–CA–83.

Decided May 28, 2004.

James N. Griffin, for appellant.

Edwin A. Grinvalds, for appellees.

———

FAIN, Presiding Judge.

{¶ 1} Plaintiff-appellant Lorrie L. Byrd appeals from a summary judgment rendered against her on her petition to determine heirship, and in favor of defendants-appellees Eileen Trennor and John Charles Fitzgiven. In her petition, Byrd alleged that she was the daughter of Daniel Fitzgiven, who died intestate. Byrd contends that the judgment denying her the right to participate in her father's estate violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

{¶ 2} In accordance with the Ohio Supreme Court's decision in *White v. Randolph* (1979), 59 Ohio St.2d 6, 13 O.O.3d 3, 391 N.E.2d 333, and *Brookbank v.*

*Gray* (1996), 74 Ohio St.3d 279, 658 N.E.2d 724, we reject Byrd's equal-protection argument. Byrd failed to establish an essential element of her claim: her legitimization under one of the accepted methods for purposes of obtaining the status of a "child" under R.C. 2105.06, and the probate court did not have jurisdiction to hear a parentage action under R.C. Chapter 3111. Consequently, we conclude that the probate court did not err in rendering summary judgment in favor of Trennor and Fitzgiven, determining that Byrd had no right to participate in her father's estate.

{¶ 3} Therefore, the judgment of the probate court is affirmed.

I

{¶ 4} On May 4, 2003, Daniel Fitzgiven died intestate. A few days later, Lorrie L. Byrd filed a petition to determine heirship in the Clark County Probate Court against the surviving relatives of Daniel Fitzgiven: Eileen Trennor, his sister, and John Charles Fitzgiven, his nephew, alleging that she was the daughter of Daniel Fitzgiven. In her petition, Byrd admitted that her mother was never married to Daniel Fitzgiven.

{¶ 5} The parties stipulated to the following:

{¶ 6} "1. Lorrie Byrd was never adopted by Daniel Fitzgiven.

{¶ 7} "2. Lorrie Byrd was not acknowledged by Daniel Fitzgiven in any probate court proceeding in Clark County, Ohio, to legitimize a child; or any county at all, to anyone's knowledge.

{¶ 8} "3. Lorrie Byrd was not designated in the probate court as an heir at law of Daniel Fitzgiven.

{¶ 9} "4. The parties do not know of a last will and testament left by Daniel Fitzgiven.

{¶ 10} "5. Pursuant to DNA testing, Lorrie Byrd is the biological child of Daniel Fitzgiven."

{¶ 11} Trennor and Fitzgiven filed a motion for summary judgment against Byrd. The probate court rendered summary judgment in favor of Trennor and Fitzgiven. The probate court concluded that Byrd is not entitled to inherit under the laws of descent and distribution, R.C. 2105.06, because Byrd failed to show that she is a "child" within the meaning of R.C. 2105.06. The probate court found that Byrd failed to establish that she was a "child" within the meaning of R.C. 2105.06, because she did not show that she fell into one of the five categories, set forth by law, that would legitimize her. The probate court also found that although Byrd might be able to establish that she is Daniel Fitzgiven's daughter by bringing a parentage action pursuant to R.C. 3111.04, the probate court does

not have jurisdiction to establish paternity under R.C. Chapter 3111. From the summary judgment rendered against her, Byrd appeals.

II

{¶ 12} Byrd's sole assignment of error is as follows:

{¶ 13} "The probate court erred to the prejudice of Lorrie L. Byrd when it ruled that absent an acknowledgment or legal action to determine heirship prior to the death of Daniel Fitzgiven, Lorrie L. Byrd could not participate in the estate of Daniel Fitzgiven."

{¶ 14} We review the appropriateness of summary judgment de novo and follow the standards set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 370, 696 N.E.2d 201.

{¶ 15} Byrd contends that the probate court's denial of her right to participate in her father's estate is a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Byrd contends that R.C. 2105.06 is unconstitutional because it distinguishes between illegitimate children of deceased fathers and illegitimate children of deceased mothers, placing the two groups of illegitimate children in different categories. Byrd argues that illegitimate children of deceased fathers can inherit only if they prove that they fall into one of the five categories that would legitimize them, while illegitimate children of deceased mothers can inherit without having to so prove. Byrd contends that this classification is impermissible, because modern scientific testing can conclusively determine paternity. For the same reasons, Byrd argues that it is impermissible to distinguish between illegitimate children who are allowed to inherit from the wrongful death of a parent under R.C. 2125.02, and illegitimate children who may not inherit from the death of a parent under R.C. 2105.06. Thus, Byrd contends that the probate court erred in its failure to consider the scientific proof of paternity.

{¶ 16} R.C. 2105.06, the statute of descent and distribution, provides, in its entirety, that "[w]hen a person dies intestate having title or right to any personal property, or to any real estate or inheritance, in this state, the personal property shall be distributed, and the real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:

{¶ 17} "(A) If there is no surviving spouse, to the children of the intestate or their lineal descendants, per stirpes;

{¶ 18} "(B) If there is a spouse and one or more children of the decedent or their lineal descendants surviving, and all of the decedent's children who survive or have lineal descendants surviving also are children of the surviving spouse, then the whole to the surviving spouse;

{¶ 19} "(C) If there is a spouse and one child of the decedent or the child's lineal descendants surviving and the surviving spouse is not the natural or adoptive parent of the decedent's child, the first twenty thousand dollars plus one-half of the balance of the intestate estate to the spouse and the remainder to the child or the child's lineal descendants, per stirpes;

{¶ 20} "(D) If there is a spouse and more than one child or their lineal descendants surviving, the first sixty thousand dollars if the spouse is the natural or adoptive parent of one, but not all, of the children, or the first twenty thousand dollars if the spouse is the natural or adoptive parent of none of the children, plus one-third of the balance of the intestate estate to the spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes;

{¶ 21} "(E) If there are no children or their lineal descendants, then the whole to the surviving spouse;

{¶ 22} "(F) If there is no spouse and no children or their lineal descendants, to the parents of the intestate equally, or to the surviving parent;

{¶ 23} "(G) If there is no spouse, no children or their lineal descendants, and no parent surviving, to the brothers and sisters, whether of the whole or of the half blood of the intestate, or their lineal descendants, per stirpes;

{¶ 24} "(H) If there are no brothers or sisters or their lineal descendants, one-half to the paternal grandparents of the intestate equally, or to the survivor of them, and one-half to the maternal grandparents of the intestate equally, or to the survivor of them;

{¶ 25} "(I) If there is no paternal grandparent or no maternal grandparent, one-half to the lineal descendants of the deceased grandparents, per stirpes; if there are no such lineal descendants, then to the surviving grandparents or their lineal descendants, per stirpes; if there are no surviving grandparents or their lineal descendants, then to the next of kin of the intestate, provided there shall be no representation among such next of kin;

{¶ 26} "(J) If there are no next of kin, to stepchildren or their lineal descendants, per stirpes;

{¶ 27} "(K) If there are no stepchildren or their lineal descendants, escheat to the state."

{¶ 28} Although R.C. 2105.17 allows illegitimate children to inherit from their mothers, illegitimate children can inherit from their fathers under R.C. 2105.06 only if paternity is established prior to the death of the father. See *In re Estate of Hicks* (1993), 90 Ohio App.3d 483, 487, 629 N.E.2d 1086. Illegitimate children can inherit from their fathers if it is shown that affirmative steps were taken by their father, which could include (1) marrying the child's mother; (2) providing for the child in a will; (3) adopting the child; (4) acknowledging the child pursuant to R.C. 2105.18; or (5) designating the child as his heir at law pursuant to R.C. 2105.15. *Birman v. Sproat* (1988), 47 Ohio App.3d 65, 66, 546 N.E.2d 1354, citing *White v. Randolph* (1979), 59 Ohio St.2d 6, 13 O.O.3d 3, 391 N.E.2d 333. Where the parent-child relationship is established prior to the father's death, no differentiation is to be made in the rights of children based upon whether they were born in or out of wedlock. Id.

{¶ 29} Byrd concedes that the parent-child relationship was not established prior to the death of her father. Byrd admits in her petition that her mother and father were never married. Byrd made no showing that her father left a will providing for her and stipulated that, in fact, she did not know whether her father left a will. Byrd also stipulated that her father never adopted her, that her father never acknowledged her, and that her father did not designate her as an heir at law. Therefore, Byrd failed to establish that she fell into one of the five categories, set forth by law, that would legitimize her.

{¶ 30} Illegitimate children may also inherit from their fathers if they prove that they are "children," within the meaning of R.C. 2105.06, by bringing a parentage action under R.C. 3111.04 to determine the father-child relationship. *In re Estate of Hicks*, 90 Ohio App.3d at 488, 629 N.E.2d 1086. "R.C. Chapter 3111 does not require a parentage action to be brought before the death of the father." Id. at 486, 629 N.E.2d 1086. Thus, the only way Byrd could affirmatively seek relief would be under the Ohio Parentage Act, R.C. Chapter 3111. However, a probate court does not have jurisdiction to hear a parentage action under R.C. Chapter 3111. Id. at 488, 629 N.E.2d 1086, citing *Martin v. Davidson* (1990), 53 Ohio St.3d 240, 559 N.E.2d 1348. Byrd brought this action in the Clark County Probate Court. Byrd may not seek such a declaration in the probate court.

{¶ 31} In *White v. Randolph* (1979), 59 Ohio St.2d 6, 13 O.O.3d 3, 391 N.E.2d 333, the Ohio Supreme Court upheld the constitutionality of the different treatment of illegitimate children of intestate fathers, as against an equal protection challenge, citing "the difficulty of proving paternity and the possibility

of fraudulent assertions of paternity upon the estate of the decedent" as justifying a finding that the different treatment in the Ohio intestate succession statute is substantially related to the important state interest in the just and orderly disposition of property at death. Id. at 11, 13 O.O.3d 3, 391 N.E.2d 333.

{¶ 32} Byrd contends, and we tend to agree, that the efficacy of genetic testing has ameliorated the difficulty of proving paternity and the possibility of fraudulent assertions of paternity to the extent that these concerns may no longer justify differentiating between illegitimate children of fathers and illegitimate children of mothers. However, there is another reason for this different treatment in the context of intestate succession, to which the Ohio Supreme Court briefly alludes in *Brookbank v. Gray* (1996), 74 Ohio St.3d 279, 658 N.E.2d 724, a case involving the participation of illegitimate children in wrongful death awards. In its opinion, the court noted: "Also, any presumption that can be made that a father who did not legitimate his illegitimate offspring did not intend to leave his property at death to such child is irrelevant in wrongful death cases." Id. at 285, 658 N.E.2d 724. This touches upon the concern, in the law of both testate and intestate succession, with the intentions and wishes of the decedent in the disposition of his estate.

{¶ 33} Due to inherent biological differences between the genders, there is a significant possibility that a father of an illegitimate child may be unaware of that child's existence, whereas it is extremely unlikely that the mother of an illegitimate child will be unaware of the child's existence. When that father dies without having made a will, he is likely to know, generally, that his estate will pass to his surviving spouse, if any, and to his lineal descendants, although he may well be unaware of the exact proportions that each heir will receive. His conscious or unconscious decision not to make a will is likely to be influenced by the fact that he is content that those persons will receive his property at his death. If there were any of those persons that he did not want to receive a portion of his estate, he would presumably take the trouble to write a will disinheriting that individual. But he cannot be presumed to be content that his property will pass at his death to some person whose relationship to him as his child is unknown to him during his life. By asserting the existence of the father-child relationship after the death of the father, the child deprives the father of the opportunity, during life, to make a will disinheriting the child. In requiring that assertions of the existence of a father-child relationship be made during the life of the father, the intestate succession statute serves the important state interest of enabling the father to make the decision whether to make a will with knowledge of the consequences of that decision.

{¶ 34} Of course, it can be argued, with some force, that R.C. Chapter 3111 in fact provides for the assertion of parentage after the death of the father. This

was so held in *In re Estate of Hicks* (1993), 90 Ohio App.3d 483, 487, 629 N.E.2d 1086. See the discussion and cases cited in *Brookbank v. Gray*, supra, 74 Ohio St.3d at 283, 658 N.E.2d 724. Even if R.C. 2105.06, the statute of descent and distribution, were interpreted as precluding the establishment of parentage, pursuant to R.C. Chapter 3111, by an illegitimate child after the death of the father, we conclude that this would not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in view of the important state interest that would thereby be served, which we have cited in the preceding paragraph. In *Brookbank v. Gray*, supra, a case involving the right of illegitimate children to participate in wrongful-death recoveries, the Ohio Supreme Court has indicated that the ability of the Ohio Statute of Descent and Distribution to withstand constitutional challenge under the Equal Protection Clause continues, even if the parentage act is deemed not to apply in those cases: "Vestiges of the common-law rule [that an illegitimate child could not inherit from the mother or father] obviously still remain in the Statute of Descent and Distribution. Whether or not this has been changed by the enactment of the Ohio Parentage Act is inconsequential for purposes of an equal protection analysis. Even if the Parentage Act were interpreted to preclude illegitimate children from claiming inheritance rights from and through their natural fathers absent an adjudication of paternity *inter vivos*, it is clear that the Ohio intestate succession scheme would nevertheless be constitutional. In providing several options by which the illegitimate child may effectuate inheritance rights *inter vivos*, including acknowledgement, legitimation and a right of action by the child to establish paternity, Ohio law would still fall within that 'middle ground between the extremes of complete exclusion and case-by-case determination of paternity that could allowably be included within the state legislation.' *White*, supra, 59 Ohio St.2d at 9, 13 O.O.3d at 5, 391 N.E.2d at 335. See, also, *Lalli v. Lalli* (1978), 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503; *Trimble v. Gordon* (1977), 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31; *Labine v. Vincent* (1971), 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288." *Brookbank*, 74 Ohio St.3d at 287–288, 658 N.E.2d 724.

{¶ 35} We conclude that the probate court's denial of Byrd's right to participate in her father's estate is not a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

{¶ 36} Because Byrd failed to establish an essential element of her claim, the legitimization of herself under one of the accepted methods for purposes of obtaining the status of a "child" under R.C. 2105.06, and the probate court did not have jurisdiction to hear a parentage action under R.C. Chapter 3111, we conclude that the probate court did not err in rendering summary judgment in favor of Trennor and Fitzgiven, determining that Byrd could not participate in

the estate of Daniel Fitzgiven. The fact that Daniel Fitzgiven is Byrd's father does not establish Byrd's right of inheritance pursuant to R.C. 2105.06. We conclude that Byrd is not entitled to inherit from her father under the laws of descent and distribution, R.C. 2105.06, because Byrd failed to show that she was a "child" within the meaning of R.C. 2105.06. Byrd's sole assignment of error is overruled.

## IV

{¶ 37} Byrd's sole assignment of error having been overruled, we affirm the judgment of the probate court.

Judgment affirmed.

BROGAN and FREDERICK N. YOUNG, JJ., concur.