OPINION
{¶ 1} Appellant, Nicholas Verdone, appeals from the judgment of the Lake County Common Pleas Court, Probate Division, which adopted a magistrate's decision finding appellant's consent was not required for the adoption of his natural child, Rebecca Lynn Verdone.
 {¶ 2} Appellant and Rebecca's mother, Anna, began living together in October 1998. Rebecca was born September 9, 1999. On July 17, 2001 an incident occurred between appellant and Anna. Anna and Rebecca moved out of the residence.
 {¶ 3} On March 22, 2002, Anna and appellant entered into an agreement that determined the issues of visitation and child support. The parties abided by this agreement until late February 2003. At that time, an issue arose between appellant and Anna and Anna filed a civil stalking complaint against appellant. Appellant did not appear at the hearing on the civil stalking complaint or defend against the proceedings in any manner. On April 4, 2003, the Lake County Common Pleas Court issued a civil protection order against appellant. The order specifically provided, "[appellant] is not precluded from pursuing visitation in an appropriate juvenile court."
 {¶ 4} On September 9, 2003, appellant filed an application with the Lake County Department of Job and Family Services to establish parentage. Appellant was subsequently notified his application was denied because he had signed Rebecca's birth certificate and was already in the Centralized Paternity Register. On October 8, 2003, appellant filed a complaint in the Lake County Common Pleas Court, Juvenile Division, to allocate residential placement and legal custody of Rebecca. In accordance with the Local Rules of the Lake County Court, that proceeding was delayed while genetic tests were performed to establish paternity.
 {¶ 5} Anna married appellee, Joseph Pushcar on January 24, 2004. On March 22, 2004, appellee filed his petition for adoption. Appellant opposed the adoption petition and the matter was referred to a magistrate for a hearing to determine whether appellant's consent was required for the adoption under R.C. 3107.07(A).
 {¶ 6} Following the hearing, the magistrate entered findings of fact and conclusions of law. The magistrate found by clear, convincing evidence that appellant had failed to provide maintenance and support or communicate with Rebecca for a period of one year prior to the filing of the adoption petition, and that the failure was not justified.
 {¶ 7} Appellant filed objections to the magistrate's decision. The trial court overruled appellant's objections and adopted the magistrate's decision. Appellant appealed raising one assignment of error: "Whether the trial court erred to the prejudice of the natural father when it held that consent to the adoption was not required."
 {¶ 8} R.C. 3107.07 provides in relevant part:
 {¶ 9} "Consent to adoption is not required of any of the following:
 {¶ 10} "(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner."
 {¶ 11} We will reverse a trial court's determination under R.C.3107.07(A) only if it is against the manifest weight of the evidence. Inre Adoption of Masa (1986), 23 Ohio St.3d 163, at paragraph 2 of the syllabus; In re Adoption of Bovett (1987), 33 Ohio St.3d 102, at paragraph four of the syllabus.
 {¶ 12} In Bovett, the Court set forth the standard to apply in proceedings under R.C. 3107.07(A). The Court held:
 {¶ 13} "1. Pursuant to R.C. 3107.07(A), the petitioner for adoption has the burden of proving, by clear and convincing evidence, both (1) that the natural parent has failed to support the child for the requisite one-year period, and (2) that this failure was without justifiable cause. (In re Adoption of Masa [1986], 23 Ohio St.3d 163, 23 OBR 330,492 N.E.2d 140, paragraph one of the syllabus, followed.)
 {¶ 14} "2. Once the petitioner has established, by clear and convincing evidence that the natural parent has failed to support the child for at least the requisite one-year period, the burden of going forward with the evidence shifts to the natural parent to show some facially justifiable cause for such failure. The burden of proof, however, remains with the petitioner.
 {¶ 15} "3. Under R.C. 3107.07(A), the probate court shall determine the issue of justifiable cause by weighing the evidence of the natural parent's circumstances for the statutory period for which he or she failed to provide support. The court shall determine whether the parent's failure to support the child for that period as a whole (and not just a portion thereof) was without justifiable cause." Id. at paragraphs one, two, and three of the syllabus.
 {¶ 16} Appellant argues he made efforts within the year preceding the filing of the petition to reestablish contact with and support his daughter. Appellant filed paternity proceedings in juvenile court on October 8, 2003. Paternity actions must be brought under R.C. 3111.04.Byrd v. Trennor, 157 Ohio App.3d 358, 2004-Ohio-2736, ¶ 30; see, also, In re Estate of Hicks (1993), 90 Ohio App.3d 483, 488. The original jurisdiction to hear a paternity action lies explicitly and concurrently in the domestic relations and juvenile court pursuant to R.C. 3111.06(A).
 {¶ 17} Appellant also argues his failure to do so was justified because he could not contact Anna without violating the civil stalking order. Appellant also argues he could not provide support because had he done so he would have been in violation of the civil stalking order. Appellant also argues Anna concealed her address and telephone number from him to prevent him from having visitation with Rebecca.
 {¶ 18} Appellee counters that appellant had other means to communicate with and support Rebecca — he could have contacted Anna's parents or initiated court proceedings at an earlier date.
 {¶ 19} There are two fundamental issues in this case. The first is what obligation, if any, did appellant have to support Rebecca, and what rights to visitation did he have during the one year preceding the filing of the petition for adoption. The second issue is whether or not the probate court had the authority to proceed on the adoption petition prior to the conclusion of the paternity action in juvenile court. We hold that they did not.
 {¶ 20} In In re Adoption of Sunderhaus (1992), 63 Ohio St.3d 127, as in the instant case, the child was born out of wedlock to a mother and father who lived together. The father signed the birth certificate. The mother subsequently married another man and he filed a petition for adoption. The natural father filed an action to establish paternity. In response, the mother alleged someone else might have been the natural father. In the adoption case, the mother also alleged the father's consent was not required pursuant to R.C. 3107.07(A).
 {¶ 21} The Ohio Supreme Court held:
 {¶ 22} "1. An unmarried parent is subject to the support obligation to which R.C. 3107.07(A) refers only where a paternity determination has been rendered pursuant to R.C. 3111.08(B) or 3111.12.
 {¶ 23} "2. The one-year period of nonsupport prescribed by R.C.3107.07(A) which obviates the requirement to obtain parental consent to an adoption pursuant to R.C. 3107.06 commences on the date that parentage has been judicially established." Id. at paragraphs one and two of the syllabus.
 {¶ 24} In the instant case, there has been no final judicial determination of paternity. Thus, under the Ohio Supreme Court's holding in Sunderhaus, the one-year period under R.C. 3107.07(A) has not started to run.
 {¶ 25} Because no judicial determination had been made that appellant was Rebecca's father, R.C. 3107.07(A) was inapplicable in the instant case. Thus, the trial court's judgment applying that section was contrary to law. As a matter of law, the probate court cannot allow the adoption to proceed under R.C. 3107.07(A) because there has been no judicial determination as to parentage. Sunderhaus, supra at paragraphs one and two of the syllabus.
 {¶ 26} The second issue is whether the probate court had jurisdiction to hear this matter, and if so, consistent with Ohio law if it was permitted to exercise that jurisdiction. On October 8, 2003, appellant filed a complaint in the Lake County Common Pleas Court, Juvenile Division, to allocate residential placement and legal custody of Rebecca. That proceeding was delayed pending the results of a DNA test, as required by Rule X of the Lake County Rules of Juvenile Court.
 {¶ 27} Appellee filed his petition for adoption in the probate court, while the action to allocate residential placement and legal custody was pending in juvenile court.
 {¶ 28} "The jurisdictional priority rule provides that between courts of concurrent jurisdiction, the authority of the court which first properly acquires jurisdiction of a matter continues until the matter is completely and finally adjudicated." In re Adoption of Stojkov, (Feb. 15, 2002), 11th Dist. Nos. 2001-T-0114 and 2001-T-0115, 2002 Ohio App. LEXIS 585, at 2, citing State ex rel. Shimko v. Franklin Cty. Court ofCommon Pleas (1998), 81 Ohio St.3d 1244, 1246.
 {¶ 29} However, the jurisdiction of a court over visitation and custody does not impinge on the jurisdiction of a probate court considering an adoption petition. Id. at 3. We have held that the jurisdiction of a juvenile court is not a jurisdictional bar to adoption proceedings in a probate court. Id. quoting In re Geisman (Sept. 29, 2000), 11th Dist. No. 99-A-0071, 2000 Ohio App. LEXIS 4572, at 12. Further, in In re Biddle (1958), 168 Ohio St. 209, the Ohio Supreme Court held, "A Probate Court has jurisdiction to hear and determine an adoption proceeding relating to a minor child notwithstanding the fact that the custody of such child is at the time within the continuing jurisdiction of a divorce court." Id. at paragraph two of the syllabus. Thus, it is clear the probate court had jurisdiction to consider appellee's petition, notwithstanding the pending action in juvenile court. Jurisdiction alone, however, does not answer the question raised by this matter.
 {¶ 30} As stated by the Supreme Court of Ohio in the landmark adoption case of In Re The Adoption of Asente:
 {¶ 31} "There are many statutes, and proposed statutes, throughout this murky area of the law designed to avoid the very situation we find ourselves in today. One common thread runs through every statute, everycourt opinion, and every learned treatise on this matter. That commonthread is built on the bedrock proposition that once a court of competentjurisdiction has begun the task of deciding the long-term fate of achild, all other courts are to refrain from exercising jurisdiction overthat matter." (Emphasis added.) In re Adoption of Asente (2000),90 Ohio St.3d 91, 91-92. (In Asente, the Supreme Court of Ohio adopted the decision of this court and attached it as an exhibit.)
 {¶ 32} It is clear from the Supreme Court's language that while they acknowledge the dual jurisdiction rule established in Biddle, they were announcing unequivocally that legal "tugs of war" by multiple courts over a single child simply cannot be tolerated. The language in the Asente
case stands foursquare with the instant case. It cannot be emphasized too strongly that the Lake County Juvenile Court should be allowed to adjudicate the matter before it to a conclusion, and that all other courts refrain from intervening therein unless and until there is an adjudication from that court
 {¶ 33} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Probate Division, is reversed, and this matter is remanded for proceedings consistent with this opinion.
O'Neill, J., O'Toole, J., concur.