## WEBSTER v PULLMAN CO

Ohio Appeals, 8th Dist, Cuyahoga Co

Nos 14489 & 14490. Decided June 28, 1935

John H. McNeal, Cleveland, Parker Fulton, Cleveland, John F. Curry, Cleveland,

J. Fred Potts, Cleveland, A. A. Mastics and T. A. Maski, Cleveland, for plaintiff in error.

Day & Day, Cleveland, for defendant in error.

LEMERT. PJ, MONTGOMERY and SHERICK, JJ. (5th Dist) sitting by designation.

## OPINION

By SHERICK, J.

The plaintiff in error maintains that the trial court was guilty of a gross abuse of its discretion in its finding upon the respective motions, and that thereby the court deprived him arbitrarily and unlawfully of his substantial right to judgment upon the jury's verdict. He is met in this court with a motion asking for dismissal of the proceedings, predicated upon the assumption that the trial court entered no judgment or final order from which error may be prosecuted to this court and hence this court is without jurisdiction to entertain the same. We readily confess that the query presented by this motion raises a most perplexing question, and in approaching its solution we shall review certain adjudicated cases which seem to us to have a bearing thereon.

In the first place it is too well settled for extended comment, further than to say that this court's limited jurisdiction reposes in constitutional provision. It is prescribed that Courts of Appeals may review a final order, and which is found to be defined in §12258 GC.

The defendant Company in the main relies upon the case of **Young v Shallenberger, 53 Oh St 291,** and that courts last pronouncement found in **Huff v Penn. Rd. Co., 127 Oh St 94.** The last noted case had its origin within the third district, and that branch of this court in considering the Huff case, **12 ABS 211,** concluded that the trial court's order granting a new trial was a final order from which error could be prosecuted. The third district found itself to be in conflict with a judgment pronounced by the first district in the case of **Iames v Cincinnati St. Ry. Co., 10 ABS 360** and certified the case to the Supreme Court for review. In both of these cases it was contended that the respective verdicts returned were against the manifest weight of the evidence and that the trial court's action was an abuse of judicial discretion. The Supreme Court in its very brief opinion makes no reference to the Iames case, or the claim that the trial court abused its discretion, but simply holds that dismissal of "the error proceedings on the ground that the granting of the motion for a new trial on the weight of the evidence was not a final order."

Examination of the opinion of the Court of Appeals in the Huff case quickly discloses that the claim therein made of abuse of judicial discretion was in fact not substan-

tiated. This the Supreme Court must have recognized, as is apparent from its disregard of that phase of the case. We therefore feel at liberty to conclude that the Supreme Court's pronouncement went no further than to hold as herein indicated. We shall assume for the purpose of further comment in view of lack of expression in the first district's opinion that a like situation developed in the Iames case or if there was present any abuse of the trial court's discretion that it was not a flagrant abuse or in any way unusual in character.

The Young case, supra, approving of and quoting from **Conrad v Rummels, 23 Oh St 601,** holds that "an order of the court granting or overruling a motion to set aside the verdict of a jury and grant a new trial, is not a final order, for the reversal of which error can be prosecuted before the final disposition of the case." The matter of abuse of discretion was not involved in either the Young or Conrad cases.

In a case subsequent to the Conrad case, that is **Beaumont v Herrick, 24 Oh St 445,** it is said, that:

"If the exercise of such discretion is reviewable on error in any case, it can only be where the record shows, in view of all the circumstances under which the court acted, an abuse of discretion, resulting in a denial to the party of a fair trial."

It is significant that in a much later case, **Davis v State, 118 Oh St 25,** the court stated that:

"This court will not weigh the evidence in connection with the motion for a new trial further than to inquire whether there was any abuse of discretion on the part of the trial court."

It is thereby indicated as in the last seven words in the quotation from the Conrad and Young cases supra, that after final judgment error may be predicated upon an abuse of the court's discretion. If error may be predicated upon an abuse of discretion where the motion for a new trial is overruled and final judgment entered, surely the record of the first trial may be examined on re-trial if the motion be sustained to ascertain if the trial court abused its discretion. It is a poor rule which may not work both ways; and if such might be reviewed on second trial, when ordinarily the cause stands as if it had never been tried, we see no sound reason why the first record might not be searched upon a proceeding in error to determine if the court

had abused its discretion. If a second adverse judgment might be reviewed and abuse of discretion considered in sustaining a motion for re-trial. The second trial would be utter folly and an unjustifiable judicial mandate which denied one a fair trial in the first instance and placed the litigants to needless expense.

We find counsel for the defendant in error, citing in support of its view, the early case of **Spafford v Bradley, 20 Ohio 75.** This case finds approval in **Beatty v Hatcher, 13 Oh St 115,** wherein the court further said:

"While it is not necessary to hold that we will in no case employ this power apparently conferred by the letter of the statute, we are free to say that it will require a **strong case** to justify its exercise."

And in **Dean v King and Company, 22 Oh St 118,** it is held that:

"Motions for new trials, upon the ground that the verdict is against the weight of the evidence, are addressed to the discretion of the court, and if granted, the judgment will not be disturbed on error unless the case is so **strong as to show an abuse of discretion.**"

We are unable to find that this expression of the Dean case has ever been disavowed. It seems to us to be sound in logic and principle. We therefore conclude that if a claimed abuse of the trial court's discretion in sustaining a motion for a new trial is found to exist upon a perusal of the record, then it becomes the duty of the reviewing court to find and hold that the complaining party has been denied a fair trial and has been deprived of a "substantial right in an action—and prevents a judgment" on the verdict in his favor. In other words an abuse of discretion in such a respect is a final order and confers jurisdiction upon a reviewing court under the law of this state.

We would further illustrate by an overdrawn example. Let us presume, even though it is almost inconceivable, that a trial court arbitrarily and through favoritism or malice should sustain a motion for a new trial and deprive one of a judgment on the verdict to which he was justly entitled. It seems incomprehensible that a reviewing court would sit idly by, supine and confess its impotency to right a grievous wrong. If such a situation should be countenanced with the answer of no jurisdiction because such was not a final order

confidence in the courts would be destroyed and government fail. Like Caesar's wife, courts must be "above suspicion."

We therefore conclude it to be our duty to examine the record before us to ascertain if there has been a gross abuse of discretion and a **strong** case if such appears as is claimed. If it does not so appear the motion must be sustained. If the record bears out the claim the motion must be overruled.

It is made to appear that the defendant in error's motion for a new trial was presented to the trial court on July 21st, 1934. It took the same under advisement. Two days thereafter the trial judge met a member of the firm of attorneys who represented the defendant Company and made known to him that he desired a view of the scene of the accident. Thereupon arrangements were made and the trial court in the company of the attorney, and the company's superintendent and its general foreman and other company employees repaired to the place where the accident occurred, a ladder and truck were procured, the ladder was placed in a position similar to its location when the plaintiff fell therefrom. This the court mounted to a height recalled by his honor to be about that at which the plaintiff had stood when the ladder was struck. The truck was then backed into the court's range of vision. From his position on the ladder the court made ocular observation. It is further testified to by the trial court that he asked some question of the company's superintendent as to where certain defendant witnesses had stood when the plaintiff fell. He was answered in accordance with the superintendent's understanding gained sometime after the injury and concerning which he had not testified to at the trial. It is also shown that the court made further inquiry, and estimated after having had the superintendent estimate the distance to the yard master's shanty. All of this was done without the knowledge or presence of plaintiff or any of his counsel.

On July 25th, the parties counsel having been summoned, the court proceeded in a lengthy opinion to sustain the motion. At the conclusion thereof the court first informed plaintiff's counsel that he had viewed the premises, the manner thereof, and who had accompanied him at the time. He further informed him that he had intended to make reference thereto in his opinion but that through inadvertence he had neglected to do so. In his deposition thereafter taken by plaintiff in support of his motion to vacate the court stated that prior to his inspection that he had determined to sustain the motion for a new trial, that he was not influenced by what he observed and heard, and that he made his investigation with the sole purpose in mind of protecting the plaintiff if he had in any way misunderstood the evidence adduced at trial.

Examination of the court's opinion discloses that the court found that "this plaintiff unquestionably had tremendously severe injuries," and that "the verdict is unusually large, but probably could not by anyone be regarded as an excessive verdict." The court made further observations that before a court should set aside a jury's verdict "a perfectly unanswerable case of a verdict manifestly against the weight of the evidence must be presented," and that the "mere difference of opinion between the court and jury as to the facts in controversy must be disregarded," and that "every presumption must be drawn in favor of the regularity and validity of the jury's verdict." The court then proceeded further to point out that there here existed a case "of a single witness upon the one hand confronted by the testimony of at least three witnesses to the contrary" and that there is no corroboration of the plaintiff's testimony and the absence of such "is a tremendous fact to challenge its credibility." The court next concludes that the plaintiff's story contains "inherently a large element of improbability." It is found to be incredible that one should back rather than pull a baggage truck, that one backing a truck would fail to observe a ladder in plain sight ahead of him. We here inject that plaintiff testified that the truck operator was looking to his left at the time. That it is improbable if a truck struck the ladder that it would revolve upon the axis of one of its sides rather than topple over; that the probable consequence of such a blow would have caused one to cling to the rungs and that he would not have fallen. The court next questions the detail with which the plaintiff says he observed the truck and the articles upon it, and the plaintiff's ability to have seen the truck approaching the ladder by reason of his position on the ladder and the obstructions which must have cut off his view. The court then comments upon the fact that the plaintiff called upon the company employee, Tye, who was moving the truck and that he contradicts the plaintiff in a number of respects, that he made this witness his witness. He was called for the very

purpose of ascertaining whose employee he was, that fact not being admitted and which was highly essential for the plaintiff to establish and maintain his case. The record discloses that this witness was hostile and was principally relied upon by the Company to refute the plaintiff's claim of injury. The court concludes that the defendant's witnesses told the truth and that the plaintiff's testimony was not worthy of belief.

It is indeed impossible to attempt to harmonize the various pronouncements of the Ohio courts as to just what may be considered by a trial court in passing upon a motion for a new trial. It may however be stated with certainty that it is not the rule of this state, as adopted by some jurisdictions, that a trial judge in this particular instance may exercise the prerogative of a chancellor and substitute his judgment for that of the jury, which is always admonished in the court's charge that it is the exclusive judge of the facts and the credibility of the witnesses. Ohio has subscribed to the general doctrine, found concisely stated in Volume 20 R.C.L. 278, §61, under the heading of New Trial and Credibility of Evidence, and which we quote:

"Where the determination of an issue of fact depends upon the credibility of witnesses, and where a jury would be justified in coming to a conclusion either way, according to the credence to be given the testimony on the respective sides, the issue is for the jury, even though the court is convinced as to where the truth lies, and the court will not interpose for the purpose of granting a new trial, unless it be in order to remedy some manifest error. In such a case it is not enough that it is clear that the verdict is right; but it must plainly appear that it is wrong to induce the court to set aside the verdict. If the verdict to which the jury have agreed is a conclusion to which twelve honest men, acting fairly and intelligently, might come, then it is final and cannot be disturbed. In such a case, if the trial judge should set aside the verdict, he would himself be in error. He would pass the bounds of his own proper function and invade the province of the jury."

Bearing in mind that the essential facts in this case are in direct conflict, and that the plaintiff's testimony directly establishes the defendant's negligent act without recourse to inference or probabilities and which is not weakened in any respect by plaintiff's other evidence, unless it be in the instance of the witness Tye, by whose evidence he cannot be bound, and the well recognized rule as charged in this case that numerical balancing of conflicting witnesses is not to be taken as the test in determining the weight of the evidence and the elemental rule of justice that truth ordinarily needs no corroboration, then it is clear beyond question of doubt that the trial court sustained the motion for a new trial upon the sole ground of the credibility of the witnesses backed up by his judgment of the facts which will hereinafter be further considered.

It may be understood that we will recognize that credibility of witnesses may be considered by the court upon motion for a new trial when contradicting statements come from the mouth of a witness, or the very nature and substance of his testimony discloses its fabrication or impossibility and unworthiness of belief by reasonable-minded men and when such facts appear in conjunction with other matters and things which combined clearly indicate that a fair trial has not been had or substantial justice done.

Can it be said in this case that the verdict is clearly against the weight of the evidence? We think not. Eleven unbiased and unprejudiced jurors concluded the plaintiff's story to be true. We see no reason or authority for disregard of their judgment in the questions of which they were the sole arbitrators.

There is an undoubted right in a trial court when knowledge and opportunity is given and afforded opposing litigants to view the site of an accident; but we know of no rule of practice which recognizes a right in a trial judge to do so accompanied by the representatives of one side of the case without the knowledge or consent of the other and to there attempt to stage a re-setting of the scene and to there ask questions as to evidential facts or solicit and receive opinions of those who have not testified on the point in question.

The court testifies that he was in no way influenced by his inspection; but the fact is indisputable that his view substantiated his judgment, confirmed him in his conclusion, and caused him to weigh the evidence to the end that it was determined that the plaintiff's evidence was unworthy of belief. Let us pursue the court's reasoning. He says that he saw the truck when its rear end passed the pillar. He did not cause it to be backed the additional ten or twelve feet necessary to make contact with the ladder. Perhaps he might then have

seen articles placed on the truck. He perhaps never picked fruit from a ladder and had it turn upon the axis of one upright. He perhaps never observed upon railway platforms trainmen expertly backing empty trucks, which the members of this court have many times observed. He has defendant's employees stand where defendant's superintendent understands them to have stood. He expresses and solicits opinion of distance otherwise than as testified to by defendant's witness at trial. We conclude that the trial court "unwittingly became a witness in the case, and in some degree at least, based his judgment upon his own individual experience and preconceived opinion. In doing so, he denied perhaps unintentionally, the probative force" of plaintiff's evidence, as was held in Elston v McGlanfin. 140 Pac. 396.

The case of Ralph v Southern Railway Co., 158 SE 409 is worthy of perusal. It might well be commented upon at length. We quote but a portion:

"It is the boast of our Anglo-Saxon system of jurisprudence that trials in our courts of law are conducted under established rules or procedure which insure a fair and open trial, where everything is done in the open, the jurors are drawn and sworn in open court, the judge's rulings and decisions are made in open court, and everything done is made of record. Litigants are guaranteed the right to be heard by counsel or in person in every step of the trial and upon every phase of it. So jealous is the law of the untarnished reputation of its courts for the strictest adherence to the fixed rules of legal procedure that it will annul and set aside any action of the court taken in disregard of them."

In drawing this extended opinion to a close we are constrained to further suggest the case of Strode, Exr. v Strode, 194 Ky. 665. This was a case involving the sustaining of a motion for a new trial. It among other things was aptly stated:

"In the granting of new trials the court has a broad discretion, and its action in doing so will not be interfered with by this court unless it clearly appears that such discretion has been abused, since this court will interfere in such case with greater reluctance than when the court overrules a motion for a new trial; but that rule is one more of admonitory caution to the appellate court than an enlargement of the power in the trial court."

This court for the reasons indicated concludes that the trial court abused its judicial discretion in sustaining the motion for a new trial. It follows that the motion attacking this court's jurisdiction is not well taken and the same is overruled. The judgment is reversed and cause remanded to the trial court with instructions to sustain the plaintiff's motion to vacate its order granting a new trial and to enter judgment upon the verdict.

LEMERT and MONTGOMERY, JJ, concur.