BIRMAN, APPELLANT, *v.*
SPROAT ET AL., APPELLEES.

(No. 87-CA-29—Decided
April 6, 1988.)

*Benjamin E. Hiser,* for appellant.
*James R. Kirkland* and *Jack L. Neuenschwander,* for appellees.

BROGAN, J.    This appeal concerns the resolution of a will contest action in the Miami County Court of Common Pleas, Probate Division. Appellant, Constance Birman, appeals from the trial court's decision granting summary judgment to Frances Sproat et al., appellees.

This action began with a complaint by Birman to contest the last will (and codicil) of Vearl N. Sproat, deceased. She alleged that she was the daughter and heir at law of the deceased and that he lacked testamentary capacity to execute the will and that the execution of the will was procured by undue influence of the named executrix Frances Sproat, also the will's proponent.

In the will attached to the complaint, Vearl Sproat made several small bequests to his son and four stepdaughters, as well as the Friedens Lutheran Church ($500 to each). Sproat left the residue of his estate to his wife, Frances Sproat, and named her executrix of the will. The will was purportedly executed on July 27, 1979, and was duly witnessed. In a codicil, dated February 27, 1985, the alternate executor was replaced by Mr. Sproat's stepdaughter.

In separate answers, the appellees as named beneficiaries in the will raised various defenses, *inter alia,* the failure to state a claim and appellant's lack of standing to bring the will contest action since she was born out of wedlock to Vearl Sproat. They admitted that the 1979 will with its 1985 codicil was the last will of Vearl Sproat but denied it was executed without testamentary capacity or under undue influence of Frances Sproat.

The appellees then moved for summary judgment and attached the affidavit of Frances Sproat who stated she was the surviving spouse of Vearl Sproat, having been married to him prior to the date of the execution of the last will.

She further attested that on July 27, 1979, and February 27, 1985, Vearl Sproat was fully and completely of sound and disposing mind and memory and was mentally and physically competent. She also stated her husband understood the nature of the business in which he was engaged, comprehended the nature and extent of his property, held in his mind the identity of those who have natural claims upon his property, was able to appreciate his

relationship to the members of his family, and in regard to all these matters was able to form a rational judgment and convey such information to his attorney who drew his will and codicil. She stated the last will and codicil of her husband, Vearl Sproat, which she filed, contained the signature of her husband.

She further stated Sproat executed his will and codicil without her knowledge, encouragement, influence, or presence. She denied exerting any influence over her husband regarding his last will or codicil. She further stated Sproat never married Birman's mother, acknowledged Birman, designated her as an heir at law, adopted her, or made provision in the will for her.

Appellant countered the motion for summary judgment with authenticated court records that established that on July 28, 1950, Vearl Sproat was found guilty in the Municipal Court of Piqua, Ohio, in a bastardy proceeding wherein the jury adjudged him to be the father of the illegitimate child of the complainant therein, Betty Hollis. Nowhere in these records is the identity of the child mentioned.

In her answer, Frances Sproat admits that appellant is the daughter of Vearl Sproat but denies that she is an heir at law. Carol Thayer, Cheryl Jessup, Cathy Flora, Janet Paul, and James Sproat deny appellant is an "heir at law" as the same is defined in R.C. 3111.01 *et seq.*

The appellees offered the deposition of Constance Birman in support of their motions for summary judgment. Birman stated she was born September 2, 1948, and her mother is Betty Jane Weber and her natural father was Vearl Sproat. She stated that her mother and father were not married at the time of her birth, and her birth certificate contained Vearl Sproat's name as her father, but she was unaware who supplied this information. She also

stated she never met her father and had never communicated with him, and that when she was very young she saw a picture of her father and herself when she lived with her maternal grandparents, Clifford and Mary Hollis.

Birman stated that she did not know of her father's mental condition at the time he made his last will and testament, she had no evidence that he was not competent to make a will in 1979 or 1985, and she had no idea whether someone influenced her father in the making of his last will. She further stated she had no witnesses to produce that her father executed his will under the undue influence of Frances Sproat or that he was incompetent to execute the will and codicil.

Birman stated that she did not know whether her father mistakenly left her out of his will, but she believed he should have included her in his will because "he was my father, and I feel he should have supported me through the years."

In her first assignment of error, appellant contends the trial court erred to her detriment when it sustained the motions for summary judgment on the issue of testamentary capacity. See, also, R.C. 2107.74.

Appellees contend that the trial court erred in determining that Constance Birman had standing to bring this will contest action because she was not a "necessary party" as defined in R.C. 2107.73(B), to wit: an heir who would take property pursuant to R.C. 2105.06 had the testator died intestate. Appellant contends the standing issue is not before the court because the trial court resolved the standing issue in appellant's favor and that ruling was not cross-appealed. An appellee, however, need not take a cross-appeal if he seeks only to sustain the trial court's judgment. *Webster* v. *Pullman Co.* (1935),

51 Ohio App. 131, 4 O.O. 549, 200 N.E. 188.

R.C. 2105.17 specifically provides that children "born out of wedlock shall be capable of inheriting * * * from * * * their mother * * *." In *White* v. *Randolph* (1979), 59 Ohio St. 2d 6, 13 O.O. 3d 3, 391 N.E. 2d 333, the Ohio Supreme Court upheld the Ohio statutes of descent and distribution, including R.C. 2105.17, which deny the right of an illegitimate child to inherit from a natural father unless the father has taken steps to legitimatize the child by marrying the mother and acknowledging the child, by acknowledging the child pursuant to R.C. 2105.18, by designating the child as his heir at law under R.C. 2105.15, by adoption, or by making provision for the child in his will.

The court noted in the decision in upholding the rationality of the classification of R.C. 2105.17, at 8, 13 O.O. 3d at 5, 391 N.E. 2d at 334:

" 'It has long been recognized in Ohio that proof of paternity, especially after the death of the alleged father, is difficult, and peculiarly subject to abuse. One of the resultants of such abuse would be the instability of land titles of real estate left by intestate fathers of illegitimate children.' " (Citing the appellate opinion below of Judge Holmes, now Justice Holmes.)

In *Beck* v. *Jolliff* (1984), 22 Ohio App. 3d 84, 22 OBR 237, 489 N.E. 2d 825, the Knox County Court of Appeals held the word "child" as used in R.C. 2105.06 includes the child born out of wedlock as well as the legitimate child if the parent-child relationship has been established prior to the death of the father pursuant to R.C. Chapter 3111, as effective June 29, 1982. The court specifically found that the proceedings under the old parentage determination, R.C. Chapter 3117, which found the decedent, Paul Beck, to be the "reputed" father of the appellant, met the tests outlined in R.C.

Chapter 3111 to establish the father-child relationship.

In *Trimble* v. *Gordon* (1977), 430 U.S. 763, the United States Supreme Court struck down Section 12 of the Illinois Probate Court Act, which allowed an illegitimate child to inherit from his father only if the parents intermarried and the child was acknowledged by the father. The petitioner in *Trimble* had been previously adjudged to be the daughter of the decedent in an action for support brought during the decedent's lifetime. The court held that the statutorily excluded class under Illinois law was over-inclusive in failing to allow those persons with a prior adjudication *or* formal acknowledgement of paternity to inherit.

In *White, supra,* the appellant, an illegitimate child, presented no evidence of a predeath determination of paternity. In *Beck, supra,* the parent-child relationship had been determined prior to the testator's death, as in the case *sub judice* and in *Trimble, supra.* We believe the trial court correctly determined that the bastardy proceedings were *res judicata* of any proceeding that might have been brought under the Uniform Parentage Act, and that it was the legislative intent not to differentiate between the rights of children, whether born in or out of wedlock, once the parent-child relationship had been established. The court properly determined that appellant had standing to bring the will contest action.

The tests for the soundness of mind at the time of making the will are set forth in the fourth paragraph of the syllabus in *Niemes* v. *Niemes* (1917), 97 Ohio St. 145, 119 N.E. 503:

"Testamentary capacity exists when the testator has sufficient mind and memory:

"First, to understand the nature of the business in which he is engaged;

"Second, to comprehend generally the nature and extent of his property;

"Third, to hold in his mind the names and identity of those who have natural claims upon his bounty;

"Fourth, to be able to appreciate his relation to the members of his family."

The second major ground relied upon in asserting a will contest is restraint, which is usually expressed as undue influence. In a will contest, the essential elements of undue influence are (1) a susceptible testator, (2) another's opportunity to exert it, (3) the fact of improper influence exerted, and (4) the result showing the effect of such influence. The fact that the will of a testator of admitted testamentary capacity disposes of his property in an unnatural manner, unjustly or unequally, and however much at variance with the expressions by the testator concerning relatives or the natural objects of his bounty, does not invalidate the will unless undue influence was actually exercised on the testator. *West v. Henry* (1962), 173 Ohio St. 498, 20 O.O. 2d 119, 184 N.E. 2d 200.

On the trial of any will contest, the order of probate is prima facie evidence of the attestation, execution, and validity of the will or codicil. R.C 2107.74. The contestants must produce evidence which furnishes a reasonable basis for sustaining their claim. If the evidence produced furnishes only a basis for a choice among different possibilities as to any issue in the case, a contestant fails to sustain his burden. *Kata v. Second Natl. Bank* (1971), 26 Ohio St. 2d 210, 55 O.O. 2d 458, 271 N.E. 2d 292; *Gannett v. Booker* (1983), 12 Ohio App. 3d 49, 12 OBR 190, 465 N.E. 2d 1326.

In the matter *sub judice,* appellees produced the affidavit of Frances Sproat, the wife of the deceased, who stated that her husband possessed the elements of testamentary capacity as envisioned in the *Niemes* decision. She further stated she exercised no undue influence over her husband at the time he executed his will and codicil.

Appellant admitted in her deposition which was offered in support of the appellees' motion that she never met her father and could offer no evidence as to his testamentary capacity at the time the will and codicil were executed by him. She also could produce no evidence on the complaint of undue influence by Mrs. Sproat.

Appellant offered no evidentiary material to combat the summary judgment motions except the court records in 1950 which established that the deceased was her father. Appellant's basic argument is that despite the fact she had no contact with her father in nearly forty years, an inference can be drawn that the deceased lacked testamentary capacity because he didn't acknowledge her in his will despite the fact that she had a "natural claim upon his bounty."

Appellant argues there is a presumption against disinheritance universally recognized by Ohio courts, citing 32 Ohio Jurisprudence 3d (1981), Decedents Estates, Section 570.

It is a primary rule applicable to the construction of wills that the heir at law shall not be disinherited by conjecture, but only by express words or necessary implication. *Crane v. Doty* (1853), 1 Ohio St. 279.

It is axiomatic that a person has a right to dispose of his property in a manner he thinks fit. *Moskowitz v. Federman* (1943), 72 Ohio App. 149, 27 O.O. 53, 51 N.E. 2d 48. Whatever interest an heir has in the estate of his ancestor depends purely on statutory provisions. Judge Chase M. Davies points out the following in 2 Addams & Hosford, Ohio Probate Practice and Procedure (6 Ed. 1989), at 211-212, citing *Crane v. Doty* (1853), 1 Ohio St. 279:

"* * * there is an idea prevailing among those who are not versed in the law that unless the testator makes some mention or provision in his will for each one of his children, that the child not so mentioned or provided for will be entitled to the share given to him by the statute of descent and distribution or that the will is entirely invalid. This idea comes from the civil law and not from the common law.

"If the testator makes no mention of one of his children in his will and by such will disposes of all his property, such child is as completely disinherited as if the testator had specifically so provided. But if the child is not mentioned in the will, then as to property *undisposed of by the will,* the child will be entitled to the provision given by the statute of descent and distribution; and our supreme court has held a testator cannot by any words of exclusion used in his will, disinherit one of his lawful heirs in respect to property *not disposed of by his will,* and that such words cannot be used to control the course of descent so as to carry the property to his other heirs." (Emphasis added.)

The heir is not to be disinherited without an express devise or necessary implication, such implication importing, not natural necessity, but so strong a probability that an intention to the contrary cannot be supposed. Merely negative words are not sufficient to exclude the title of the heir or next of kin. There must be an actual gift to some other definite object. *Wade* v. *Loach* (1899), 42 W.L.B. 254.

The specific bequests made by Vearl Sproat to his natural son and stepdaughters necessarily imply he meant to exclude the appellant from a similar bequest under his will. Appellant concedes she was not a pretermitted child or a child or designated heir who was absent or reported dead and was found alive. See R.C. 2107.34.

Vearl Sproat could legally disinherit his natural daughter. The specific bequests made to his other children without mention of appellant operated to do just that. The decedent contested paternity of appellant in 1950 and had little or no contact with her over those many years. It is not reasonable to infer from decedent's failure to provide for appellant in his last will and testament that the decedent lacked testamentary capacity.

The trial court properly determined that the appellees were entitled to summary judgment as there were no genuine facts in dispute and the appellees were entitled to judgment as a matter of law. Civ. R. 56(C). The assignment of error is overruled.

Judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS, P.J., and WOLFF, J., concur.