OPINION
This timely appeal arises from the trial court's decision to grant summary judgment to Appellee, Mary Agnes Matthews. For the following reasons, we must reverse and remand the judgment of the trial court.
Clarence Donald Matthews ("decedent") died on July 11, 1998, survived by Appellee wife, and by his children, Appellants D. Gary Matthews and Cathy Lynn Law. Appellee is not the mother of Appellants. A document purporting to be decedent's last will and testament and purportedly signed by decedent on July 10, 1998, was admitted to probate. The document named Appellee as executrix and devised all of decedent's real and personal property to her. On March 25, 1999, Appellants filed a will contest in the Jefferson County Probate Court. Appellants alleged that decedent lacked the necessary testamentary capacity and that he was subject to undue influence on the day he purportedly signed the document. At some point during the pendency of the will contest, Appellee died. Since then, Appellee's executrix has defended this action.
On September 16, 1999, Appellee filed a motion for summary judgment and attached a copy of the purported will and a copy of a survivorship deed, both allegedly signed by decedent on July 10, 1998. Also attached were affidavits from Atty. Peter Olivito, who claimed to have dictated the will document and the deed at decedent's request; Olivito's secretary, Linda Kay Burkey, who claims to have drafted the will document and deed; and Florence A. Hirkala, Appellee's sister and the executrix of her estate. All of the affidavits attest that they were present in decedent's hospital room on July 10, 1998, at approximately 11:00 a.m. The affidavits also attest that Appellant, Cathy Lynn Law, was not present at that time and that decedent, when presented with the will document and deed, requested his reading glasses which Appellee provided to him. In addition, all affiants agree that decedent was coherent.
Appellants responded by providing the court with affidavits which conflicted with those provided by Appellee. Included was Appellant Law's affidavit in which she alleged that she was in decedent's hospital room on July 10, 1998, from approximately 9:00 a.m. to 2:00 p.m. Appellant Law attested that no one visited decedent on that day except Appellee, who presented decedent with a document to sign. Appellant Law stated that decedent was heavily medicated and in a deep sleep when Appellee arrived and that before he signed the document, decedent requested his reading glasses but Appellee stated that it was not necessary for him to see what he was signing and that it was only a no-resuscitation order for the hospital. Appellants also submitted an affidavit from Appellant Matthews, and one from a family friend. All affidavits attested to decedent's lack of capacity in his final days.
On October 12, 1999, the trial court filed a judgment entry granting Appellee's motion for summary judgment. The trial court concluded that there was no genuine issue of material fact, that reasonable minds could come to but one conclusion and that conclusion was adverse to Appellants. Thus, the trial court held that Appellee was entitled to judgment as a matter of law. The trial court made no specific findings.
On October 29, 1998, Appellants filed their notice of appeal with the probate court. That notice was filed with the clerk for this court on November 1, 1999.
 ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."
Appellants argue that summary judgment was improper as there were genuine issues of material fact that should have been submitted to a jury. Appellants argue that their affidavits were "diametrically opposed" to those submitted by Appellee. (Appellant's Brief p. 9). Appellants note that their affidavits supported the proposition that decedent was incapacitated in his final days while Appellee's affidavits indicate that he was lucid and cogent. Appellants also state that their affidavits conclude that Appellee was the only person other than Appellant Law to have visited decedent at the time he purportedly signed the will and that he did not have the benefit of his reading glasses when so doing. On the other hand, Appellee's affidavits support the contention that Appellant Law was not present when decedent was given the will and deed to sign and that he was provided with his reading glasses.
Appellants state that in a will contest action, opposing affidavits regarding the testator's mental powers are sufficient to put the testator's mental capacity directly in issue, making summary judgment improper. Gannett v. Booher (1983), 12 Ohio App.3d 49, 51.
Appellee has not filed a brief. Therefore we may accept the Appellants' statement of the facts and issues as correct and reverse the judgment if Appellants' brief reasonably appears to sustain such action. App.R. 18(C). Upon our own review of the record before us, however, we must agree with Appellants that the trial court erroneously granted summary judgment to Appellee.
When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, reviewing the judgment independently and without deference to the trial court's determination. Bell v. Horton (1996), 113 Ohio App.3d 363, 364. Summary judgment under Civ.R. 56 is only proper when the movant demonstrates that:
 "(1) No genuine issue as to any material fact remains to be litigated;
 "(2) the moving party is entitled to judgment as a matter of law; and
 "(3) it appears from the evidence that reasonable minds could come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
 Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344,346. These factors clearly indicate that summary judgment should be granted with caution, being careful to resolve doubts in favor of the nonmoving party. Id.
The party seeking summary judgment has the initial burden of informing the court of the motion's basis and identifying those portions of the record tending to show that there are no genuine issues of material fact on the essential elements of the nonmoving party's claim. Dresher v.Burt (1996), 75 Ohio St.3d 280, 293. The movant must be able to point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his or her claim. Id. If this initial burden is met, the nonmoving party has a reciprocal burden to, "* * * set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not respond, summary judgment, if appropriate, shall be granted." Id.
In the present case, Appellants' will contest was based on claims of lack of capacity and undue influence:
 "Testamentary capacity exists when the testator has sufficient mind and memory:
"First, to understand the nature of the business in which he is engaged;
"Second, to comprehend generally the nature and extent of his property;
"Third, to hold in his mind the names and identity of those who have natural claims upon his bounty;
"Fourth, to be able to appreciate his relation to the members of his family."
Birman v. Sproat (1988), 47 Ohio App.3d 65, 67-68, quoting Niemes v.Niemes (1917), 97 Ohio St. 145, paragraph four of the syllabus.
In the present matter, Appellant Law's affidavit sets forth that on the day the will was signed, decedent was heavily medicated and had to be awakened from a deep sleep when Appellee presented him with a document to sign. Her affidavit also states that no other visitors, specifically, the legal team included in Appellee's affidavits, were present on that day. Moreover, the affidavit of Appellant Matthews supports that decedent's last days were marked with great pain, heavy medication and deep sleep. Viewing Appellants' affidavits in a light most favorable to them, it is reasonable to conclude that decedent lacked the proper capacity to execute a will.
In a will contest, the essential elements of undue influence are: (1) a susceptible testator, (2) another's opportunity to exert it, (3) the fact of improper influence exerted, and (4) the result showing the effect of such influence. Birman v. Sproat, supra, 68. In the present case, Appellants' affidavits lend support to the fact that decedent was susceptible, as he was heavily medicated. The affidavits also support the contention that Appellee had the opportunity to exercise undue influence and did so, particularly since Appellant Law stated that Appellee refused to provide decedent with his reading glasses. Improper influence can also be seen in the fact that the will signed on July 10, 1998, devised all of decedent's property to Appellee, while pursuant to Appellants' affidavits, decedent had recently stated his intention that his property pass to his children. Appellant Matthews stated in his affidavit that in the spring of 1998, decedent disclosed to him and family friend, Andy Andrews, that Appellants would receive decedent's property. Moreover, Andrews' affidavit supports that in the spring of 1998, he and his wife were present when decedent declared that he was leaving his property to his children. Construing these affidavits in a light most favorable to Appellants, a reasonable mind could conclude that undue influence was exercised on decedent when he signed the later will.
Given the gross discrepancies in fact apparent from the parities' affidavits, it is clear from the record that the trial court erred in granting summary judgment. Accordingly, we reverse the trial court's decision to grant summary judgment and remand this matter for further proceedings according to law and consistent with this Court's opinion.
 __________ WAITE, J.
Vukovich, P.J., concurs.
Donofrio, J., concurs.