[Cite as *Foelsch v. Farson*, 2020-Ohio-1259.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

ANNE F. FOELSCH

    Plaintiff-Appellant

-vs-

MICHAEL T. FARSON, et al.,

    Defendants-Appellees

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Craig R. Baldwin, J.
Hon. Earle E. Wise, Jr., J.

Case No. 19CA000036

O P I N IO N

CHARACTER OF PROCEEDINGS:     Appeal from the Knox County Common Pleas Court, Probate Division, Case No. 20188002A

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     March 31, 2020

APPEARANCES:

For Plaintiff-Appellant

JACK L. MOSER, JR., ESQ.
Jack Moser Law MTV Co., LPA
122 East high Street, Suite 200
Mount Vernon, Ohio  43050

For Defendants-Appellees

ADAM B. LANDON
Critchfield, Critchfield & Johnston, LTD
10 South Gay Street
P.O. Box 469
Mt. Vernon, Ohio  43050

*Hoffman, P.J.*

{¶1}   Appellant Anne Foelsch appeals the summary judgment entered by the Knox County Common Pleas Court, Probate Division, dismissing her complaint against Appellees Michael T. Farson, Phyllis Farson, Charles A. Farson, Deborah S. Farson, Paul J. Farson, Vernon J. Farson, Mary Farson-Collier, James V. Collier, Thomas Farson, Charlotte Farson, Yvonne Farson, and Joseph Farson, and the judgment awarding Appellees judgment on their counterclaim for declaratory judgment.

STATEMENT OF THE FACTS AND CASE

{¶2}   Josephine Farson and her husband John had eight children.  Seven of their children were living at the time of John's death in 2003: Appellant herein, Anne Foelsch; and Appellees Mary Farson-Collier, and Michael; Charles; Paul; Joseph; and Thomas Farson.

{¶3}   On August 11, 2004, Josephine created a trust with herself as the named trustee, and which trust equally divided the trust assets between her seven living adult children and named all seven children as successor trustees upon her death.  The document also contained a competency clause, identifying a method to challenge Josephine's competency.  Josephine deeded her real estate to the trust in 2006.

{¶4}   The trust included two forfeiture clauses, both stating any beneficiary who challenges or contests the trust should be treated as predeceased without children upon distribution of the trust assets.

{¶5}   Sometime in 2011, Josephine suffered an intracranial hemorrhage.  In August of 2011, she executed two amendments to the trust.  The first named only Michael and Charles as successor trustees, rather than all seven children.  The second amendment changed the distribution to grant specific parcels of real estate to Charles,

Paul, and Joseph, and to distribute her remaining assets between all seven children in such a way as to seek equal distribution.

**{¶6}** In September of 2015, Josephine executed a third amendment to the trust, naming Paul, Michael and Charles as successor trustees.

**{¶7}** On August 18, 2017, Josephine was diagnosed with pancreatic cancer. She opted not to seek aggressive treatment. On August 28, 2017, Josephine signed a deed transferring 29.647 acres of land from the trust to Charles. She executed a fourth amendment to the trust on September 6, 2017. This amendment distributed specific parcels of real estate to Michael, Thomas, Paul, and Joseph, and left $60,000 each to Mary and Anne in lieu of real estate. The amendment did not specify a distribution to Charles, who had received the transfer from the trust on August 28. The document stated any additional assets were to be "divided according to the desires of my heirs and trustees." Josephine passed away on October 24, 2017.

**{¶8}** Appellant filed the instant action on March 23, 2018, which included eight causes of action: a request for an accounting; breach of fiduciary duty by the successor trustees, which included a demand for recovery of trust property and removal of the trustees; claims the trust amendments are invalid due to undue influence, incompetency, and conspiracy; and intentional interference with expectancy of inheritance. Appellees counterclaimed, seeking a declaratory judgment enforcing the forfeiture clause found in the trust against Appellant.

**{¶9}** On July 3, 2019, the trial court granted summary judgment dismissing Appellant's claims of lack of testamentary capacity, undue influence, intentional interference with expectancy of inheritance, and conspiracy. The trial court declined to

grant summary judgment on the counterclaim, or on Appellant's remaining causes of action.

**{¶10}** Following a final hearing on July 11, 2019, the trial court granted judgment in favor of Appellees on their counterclaim, declaring the forfeiture provision of the trust applied against Appellant, and she was not a beneficiary of the trust pursuant to its terms. The trial court found because she was not a beneficiary of the trust, she lacked standing as to her remaining causes of action, and accordingly dismissed them.

**{¶11}** It is from the July 3, 2019, and September 11, 2019, judgments of the trial court Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON APPELLANT'S CLAIM FOR UNDUE INFLUENCE.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON APPELLANT'S CLAIM FOR LACK OF TESTAMENTARY CAPACITY.

III. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT'S ACTION TRIGGERED THE FORFEITURE CLAUSE OF THE TRUST.

IV. THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT TO APPELLEES ON APPELLANT'S CLAIM FOR INTERFERENCE WITH EXPECTANCY OF INHERITANCE.

I.

{¶12} In her first assignment of error, Appellant argues the court erred in granting summary judgment on her claim for undue influence. She argues she presented sufficient evidence to warrant a presumption of undue influence, and with or without the benefit of the legal presumption, she presented sufficient circumstantial evidence of undue influence to withstand summary judgment.

{¶13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶14} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶15} In order to show undue influence, the plaintiff must demonstrate: (1) a susceptible testator, (2) another's opportunity to exert influence, (3) the fact of improper influence exerted or attempted, and (4) the result showing the effect of such influence. *West v. Henry*, 173 Ohio St. 498, 501, 184 N.E.2d 200 (1962). The mere existence of undue influence or an opportunity to exercise it, even coupled with an interest or motive to do so, is not sufficient to invalidate a will. *Id.* Rather, the influence must be actually exerted in the mind of the testator with respect to the execution of the will at issue. *Id.* The plaintiff must show the undue influence resulted in the making of testamentary dispositions the testator otherwise would not have made. *Id.* Further, a claim of undue influence must be proven by clear and convincing evidence. *Ament v. Reassure Am. Life Ins. Co.,* 180 Ohio App.3d 440, 2009–Ohio–36, 905 N.E.2d 1246, ¶ 38 (8th Dist. Cuyahoga).

**{¶16}** The same standard applies in establishing undue influence with respect to a trust. *See* R.C. 5804.06 ("A trust is void to the extent its creation was induced by fraud, duress, or undue influence. As used in this section, 'fraud,' 'duress,' and 'undue influence' have the same meanings for trust validity purposes as they have for purposes of determining the validity of a will.").

**{¶17}** However, undue influence is presumed if the challenging party establishes a fiduciary or confidential relationship existed between the decedent and a beneficiary. *See, e.g., In re Estate of Kiefer*, 2017-Ohio-6997, 95 N.E.3d 687, ¶ 8; *Diamond v. Creager*, 2nd Dist. Montgomery No. 18819, 2002 WL 313137, at *3–*4 (Mar. 1, 2002). Where such a relationship exists, "'the transfer is looked upon with some suspicion that undue influence may have been brought to bear on the donor by the donee.'" *Bayes v. Dornon*, 2015-Ohio-3053, 37 N.E.3d 181, ¶ 48 (2d Dist.), *quoting Studniewski v. Krzyzanowski*, 65 Ohio App.3d 628, 632, 584 N.E.2d 1297 (6th Dist.1989).

**{¶18}** The trial court found Appellant presented evidence as to the first two elements of undue influence:  a susceptible testator, and another's opportunity to exert influence.  The trial court found Appellant failed to present evidence of the last two elements:  the fact of improper influence exerted or attempted, and the result showing the effect of such influence.  The trial court further found Appellant failed to demonstrate a confidential relationship, and was therefore not entitled to the presumption of undue influence.

**{¶19}  Presumption of Undue Influence:**  Appellant first argues she was entitled to a presumption of undue influence, as her siblings Mary and Michael both occupied a confidential and/or fiduciary relationship with respect to Josephine.

**{¶20}** "A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Stone v. Davis*, 66 Ohio St.2d 74, 78, 419 N.E.2d 1094 (1981). A fiduciary's role may be assumed by formal appointment or may arise from a more informal confidential relationship, wherein "one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal." *Craggett v. Adell Ins. Agency,* 92 Ohio App.3d 443, 451, 635 N.E.2d 1326 (8th Dist.1993).

**{¶21}** A "confidential relationship" exists when trust and confidence is placed in the integrity and fidelity of another. *Young v. Kaufman*, 8th Dist. Cuyahoga No. 104990, 2017-Ohio-9015, 101 N.E.3d 655, ¶ 58. To support a presumption of undue influence between a parent and a child, a confidential or fiduciary relationship must exist separate and apart from the parent-child relationship. *Jeffreys v. Dennis,* 5th Dist. Guernsey No. 96CA25, 1996 WL 753141, *3 (Dec. 2, 1996).

**{¶22}** As to Appellee Mary Farson-Collier, Appellant presented evidence Mary moved in with Josephine to care for her in August of 2017, and Josephine was fearful of going to a nursing home. In addition to residing at the home, there is evidence Mary took care of providing Josephine's medication, and communicated with medical professionals concerning Josephine's medical needs and administration of her pain medication. We find the trial court did not err as a matter of law in finding this evidence of caregiving did not rise to the level of a confidential or fiduciary relationship. We agree with the trial court Appellant failed to present evidence detailing the amount of care provided by Mary or the

extent of the relationship between Mary and Josephine, and therefore failed to present evidence the relationship between them extended beyond parent-child caregiving to the level of a confidential relationship.

{¶23} Appellant presented evidence Appellee Michael Farson drafted the trust amendment, and points to Michael's deposition testimony, "I had probably three or four drafts of property distribution before I got my mother to agree to one."  M. Farson Deposition, p. 108.

{¶24} However, we find the trial court did not err in finding Michael was not in a fiduciary or confidential relationship with Josephine.  The fact he had three or four drafts before he was able to get his mother to agree demonstrates she was still controlling the distribution of her assets, and he was attempting to draft an amendment which complied with her desires.  The mere fact Michael was involved in advising his mother and drafting documents to implement her wishes is insufficient to demonstrate he stood in a fiduciary or confidential relationship to her.  In fact, courts have been reluctant to apply the presumption and find a fiduciary or confidential relationship when the person drafting estate documents is related to the testator marriage or blood. *See, e.g., Lah v. Rogers,* 125 Ohio App.3d 164, 173, 707 N.E.2d 1208, 1213 (11th Dist. Lake 1998); *Golub v. Golub,* 8th Dist. Cuyahoga No. 97603, 2012-Ohio-2509.  Appellant did not present evidence the relationship between Michael and Josephine extended beyond that of a child attempting to help a parent draft documents to accomplish her desires for distribution of the trust assets.

{¶25} **Circumstantial Evidence of Undue Influence:**  Appellant also argues the court improperly weighed the evidence and judged the credibility of witnesses in finding

she failed to present evidence of the third and fourth prongs of the test for undue influence as set forth in *West, supra.*

**{¶26}** Appellant cites to testimony by Joseph and Thomas Farson indicating Josephine lived in a controlled environment and Mary "bossed and ordered" Josephine around. She cites to Joseph Farson's testimony he personally believed Mary, Charles, Paul and Michael pressured Josephine to make changes to the trust. She points to evidence Michael drafted the amendment to the trust, as cited above, and Mary controlled Josephine's medication. She also notes the evidence demonstrated the notary who witnessed Josephine sign the amendment did not question her understanding of the document.

**{¶27}** We find the trial court did not improperly weigh or judge the credibility of these witnesses. Rather, the trial court found their testimony insufficient to provide evidence improper influence was exerted specifically over the amendment to the trust, and further to demonstrate such alleged influence resulted in Josephine amending the trust to distribute property in a way she otherwise would not have.

**{¶28}** Other than the "hunch" or personal feelings of Joseph, Appellant presented no evidence of any control placed upon Josephine at times relevant to the trust amendments, or of the transfer or property to Charles, specifically related to her execution of the amendment or real estate transfer. She presented no evidence the ultimate disposition of assets was not in accordance with Josephine's will. While she presented evidence Josephine desired to divide her property equally amongst her seven children, the record is replete with evidence Josephine desired to accomplish her disposition of assets in a way which would not result in the farm property being sold, and therefore

desired to divide the real estate between her sons and leave cash to Mary and Anne, who resided in California, in lieu of their interest in the farm. The mere fact she took advice from her family on how to accomplish her wishes is not evidence her will was overborn and the trust amendments resulted in a distribution of assets Josephine would otherwise not have made.

{¶29} Further, as noted by the trial court, while Appellant points to evidence of Mary's control over Josephine's medication and daily activities, not only did Appellant fail to present any evidence of Mary's control over Josephine's distribution of the trust assets, but Mary also received exactly the same share as Appellant of the final trust distribution.

{¶30} We find the trial court did not err in granting Appellees' motion for summary judgment on Appellant's cause of action for undue influence. The first assignment of error is overruled.

II.

{¶31} In her second assignment of error, Appellant argues the court erred in granting Appellees' motion for summary judgment on the issue of lack of testamentary capacity.

{¶32} Testamentary capacity exists when the testator has sufficient mind and memory to: (1) understand the nature of the business in which he is engaged, (2) comprehend generally the nature and extent of his property, (3) hold in his mind the names and identity of those who have natural claims upon his bounty, and (4) appreciate his relation to the members of his family. *Birman v. Sproat*, 47 Ohio App.3d 65, 67–68, 546 N.E.2d 1354 (1988), *quoting Niemes v. Niemes*, 97 Ohio St. 145, 119 N.E. 503, paragraph four of the syllabus (1917).

**{¶33}** It is not enough to show the testator had deteriorating health, even if the testator suffered from poor medical health at the time the documents were executed. Such health decline must have actually affected the testator's capacity to execute the will. *Martin v. Dew*, 10th Dist. Franklin No. 03AP–734, 2004-Ohio-2520, 2004 WL 1109562, ¶ 19. ("[E]vidence that [the] decedent suffered from dementia or Alzheimer's disease on [the] day she executed [her] will, 'standing alone, is insufficient to raise a fact issue as to a lack of testamentary capacity without some evidence that the disease rendered her incapable of knowing her family or her estate or understanding the effect of her actions.'") *Martin* at ¶ 19, *quoting In re Estate of Hall*, Tex. App. No. 05–98–01929–CV, 2001 WL 753795 (July 5, 2001), * 4.

**{¶34}** Appellant argues the court erred in weighing the evidence, placing undue weight on the affidavit of Josephine's doctor which stated she had testamentary capacity on the date of question. The trial court outlined all of the evidence presented by Appellant, and also set forth in her brief before this Court, concerning Josephine's forgetfulness, her hallucinations caused by pain medication, her susceptibility to the influence of others, and her deteriorating memory and health. However, the trial court concluded:

> Even if the Court takes all of the above evidence as uncontroverted fact, Foelsch has failed to present any evidence that on or about the dates of the amendments and deed execution Josephine did not understand the nature of the documents she signed, that she did not understand the nature and extent of her property, that she did not recognize the names of her children and others who might have a natural claim on her bounty, or that

she did not appreciate the relationship between herself and her children. Instead, Foelsch presents evidence that Josephine could become confused or forgetful, and that she could become "totally out of it" when under the influence of large amounts of pain medication. Foelsch presents no evidence that Josephine did not recognize any of her children, or was ever confused about what property she actually owned. Foelsch did not present any evidence that Josephine was under the influence of pain medication on the days or times she signed documents to the extent that she did not know what she was signing.

**{¶35}** Judgment Entry, July 3, 2019.

**{¶36}** Contra to Appellant's argument, the trial court did not weigh the evidence. The trial court properly viewed the evidence in the light most favorably to Appellant, and concluded none of the evidence demonstrated Josephine lacked testamentary capacity as defined by *Niemes, supra.* We find the trial court did not err in granting summary judgment to Appellees on Appellant's claim of lack of testamentary capacity.

**{¶37}** The second assignment of error is overruled.

III.

**{¶38}** In her third assignment of error, Appellant argues the trial court erred in finding the forfeiture clause in the trust was enforceable against her.

**{¶39}** The original trust document included two forfeiture provisions, which the trial court found enforceable against Appellant. The first, found in Section 5.05, states the trust shall treat any beneficiary as predeceased without children should a beneficiary

legally challenge the trust, its provisions, or its asset distributions. Section 5.08 states any beneficiary who contests any aspect of the trust or attempts to set aside, nullify, or void the trust or the distribution thereof in any way shall be treated as predeceased without children upon distribution. Section 5.08 further directed the trustees to distribute the sum of $1.00 to any beneficiary breaching this directive.

**{¶40}** Ohio has long recognized the enforceability of forfeiture clauses, which essentially operate to disinherit an intended beneficiary of a will or trust if such beneficiary contests the validity of the will or trust. *See, e.g., Bradford v. Bradford,* 19 Ohio St. 546 (1869). This Court has recognized there is no "good faith" exception to the enforceability of a forfeiture clause. *Bender v. Bateman,* 33 Ohio App. 66, 69-70, 168 N.E. 574 (5th Dist. Muskingum 1929). In so holding, we noted:

A testator has unquestioned right to attach any condition to his gift which is not violative of law or public policy. The legatee may choose to take the gift with the conditions attached, or reject it. It should be the first duty of a court to guard the intention of the testator, and not to substitute official duress….It is the moral, economic rule, and the rule of written law, that one cannot both eat his cake and have it.

**{¶41}** *Id.* at 70.

**{¶42}** Appellant first argues the court erred in rejecting her argument the forfeiture clause should not apply to the amendments to the trust because it was stated only in the original trust, and not restated in the amendments. R.C. 5801.01(W) specifically defines

"trust instrument" as "an instrument executed by the settlor that contains terms of the trust and any amendments to that instrument." We find pursuant to the express language of the statute, the amendments are a part of the trust instrument, and therefore subject to the forfeiture clause in the same manner as the original trust terms.

**{¶43}** Appellant next argues pursuant to *Moskowitz v. Federman,* 72 Ohio App. 149, 51 N.E.2d 48 (9th Dist. Summit 1943), public policy, good faith, and other circumstances should be considered in determining whether a forfeiture clause should be enforced in a given case. We note the Ninth District Court of Appeals later declined to follow this dicta in *Moskowitz,* instead applying the rule of law set forth in *Bender, supra. Modie v. Andrews,* 9th Dist. Summit No. C.A. 21029, 2002-Ohio-5765, ¶22. Therefore, *Moskowitz* is no longer good law in the Ninth District Court of Appeals in which it originated, and we decline to apply it as law in the instant case.

**{¶44}** Appellant cites a number of cases in which a forfeiture clause was not enforced against a beneficiary who filed a legal action against the estate or the fiduciary. However, none of these cases involve a direct attack on the validity of the document itself. In *Kirkbride v. Hickok,* 155 Ohio St. 293, 98 N.E.2d 815 (1991), the beneficiaries sought construction of the will, and did not seek to set the will aside. In both *Modie, supra,* and *Kasapis v. High Point Furniture Co.,* 9th Dist. Summit No. 22758, 2006-Ohio-255, the beneficiary sought review of the fiduciary's conduct in administering the estate, and did not challenge the documents themselves. The beneficiary in *Riber v. Peters,* 12th Dist. Fayette No. 81-CA-27, 1982 WL 3247 (October 27, 1982), challenged certain conveyances made by the fiduciary, but did not challenge the will itself.

**{¶45}** We find these cases distinguishable from the case at bar. We find the trial court correctly concluded Appellant initiated and maintained causes of action directly attacking and attempting to invalidate the trust and its amendments, thereby invoking the forfeiture clause.

**{¶46}** The third assignment of error is overruled.

IV.

**{¶47}** In her fourth assignment of error, Appellant argues the trial court erred in granting summary judgment to Appellees on her claim for intentional interference with expectation of inheritance.

**{¶48}** The elements of the tort of intentional interference with expectation of inheritance are: (1) an existence of an expectancy of inheritance in the plaintiff; (2) an intentional interference by a defendant with the expectancy of inheritance; (3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; (4) a reasonable certainty the expectancy of inheritance would have been realized, but for the interference by the defendant; and (5) damage resulting from the interference. *Firestone v. Galbreath*, 67 Ohio St.3d 87, 88, 616 N.E.2d 202, 203 (1993).

**{¶49}** Appellant's claim relies for its validity on her argument concerning undue influence, which we rejected in Assignment of Error One, above. In granting summary judgment for Appellees on her claim for intentional interference with expectation of inheritance, the trial court stated:

Foelsch must provide evidence of a tortious act, such as fraud, duress, or undue influence, to succeed.  As addressed in other portions of this judgment entry, Foeschl [sic] has not provided evidence of fraud, duress, or undue influence sufficient to overcome summary judgment.  As Foeschl [sic] cannot provide evidence related to that element of this cause of action, she cannot overcome summary judgment on this claim.

**{¶50}**  Judgment Entry, July 3, 2019, ¶38.

**{¶51}**  We agree with the reasoning of the trial court.  The fourth assignment of error is overruled.

**{¶52}**  The judgment of the Knox County Common Pleas Court, Probate Division, is affirmed.

By: Hoffman, P.J.

Baldwin, J.  and

Wise, Earle, J. concur